1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | NYKEYA KILBY,

CASE NO. 09cv2051-MMA (KSC)

12 |                  Plaintiff,

13 |        vs.

**ORDER AFFIRMING TENTATIVE RULINGS;**

14

[Doc. No. 129]

15

16

**DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**;

17 | CVS PHARMACY, INC.,

[Doc. No. 63]

18 |                  Defendant.

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE**

19

20

[Doc. No. 83]

21        Plaintiff Nykeya Kilby brings this putative class action to recover penalties pursuant to the

22 California Labor Code Private Attorney General Act of 2004 ("PAGA") against Defendant CVS

23 Pharmacy, Inc., her former employer.  The parties appeared before the Court on April 2, 2012, for

24 hearing on Plaintiff's motion for class certification and CVS's related motion to strike.  For the

25 reasons set forth below, the Court **AFFIRMS** its previously issued tentative rulings, **DENIES**

26 Plaintiff's motion for class certification, and **GRANTS IN PART** and **DENIES IN PART** CVS's

27 motion to strike.

28 ///

### BACKGROUND

California Labor Code § 1198 prohibits the employment of any individual in the mercantile industry under labor conditions proscribed by Industrial Welfare Commission ("IWC") Wage Order 7-2001, which applies to retailers such as CVS. *See* Cal. Lab. Code § 1198; *Bright v. 99 Cents Only Stores*, 118 Cal. Rptr. 3d 723, 726-28 (2010); *Home Depot U.S.A., Inc. v. Superior Court*, 120 Cal. Rptr. 3d 166, 171-74 (2010). Section 14 of Wage Order 7-2001 provides:

> (A) All working employees shall be provided with suitable seats when the nature of work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

Plaintiff Nykeya Kilby is a resident of Chula Vista, California, and a former employee of CVS, where she worked as a "Customer Service Representative" (also referred to by the parties as a "Clerk/Cashier") for approximately eight months. Plaintiff seeks civil penalties against CVS based on CVS's alleged violation of Section 14 of Wage Order 7-2001. Specifically, Plaintiff alleges that CVS fails to provide its Clerk/Cashiers with suitable seats while operating cash registers at the front end, or retail, section of CVS stores, contrary to Section 14(A). According to Plaintiff, this in turn violates California Labor Code § 1198. Because Section 1198 does not contain its own civil penalty provision, Plaintiff states that she is entitled to recover the "default" penalties set forth in Section 2699(f) of PAGA.

According to Plaintiff, the nature of cashier work at CVS reasonably permits the use of seats because: (a) CVS places its cash registers at fixed locations within its stores; (b) operating a cash register requires the Clerk/Cashier to remain in reasonably close proximity to the cash register; (c) many of the tasks the Clerk/Cashier performs, including scanning merchandise, receiving payment, making change, and waiting for customers, could be performed from a seated position; and (d) the cash register stations at CVS could accommodate the placement of a seat or stool of some kind. FAC ¶ 14. Plaintiff seeks to represent a proposed class of former and current CVS Clerk/Cashiers who operated front end cash registers and were not provided suitable seats while doing so. Plaintiff

1   estimates the class to be comprised of thousands of individuals, and alleges that the following

2   common questions of fact and law make this action suitable for class treatment: (1) whether CVS is

3   subject to the requirements of Section 14(A) of the Wage Order; (2) whether the job of a

4   Clerk/Cashier at CVS reasonably permits the use of a seat; and (3) the amount of penalties that

5   should be awarded under PAGA.  FAC ¶ 9.  Plaintiff moves to certify the following class pursuant to

6   Federal Rule of Civil Procedure 23:

7
> All persons who, at any time since June 9, 2008, were employed by CVS as
> Clerk/Cashiers in California and were not provided with a seat while they operated a
8   front-end cash register.

9                                    **CVS'S MOTION TO STRIKE**

10          In support of her class certification motion, Plaintiff submits the "Pre-Certification Report"

11  of Professor Steven Johnson.  Professor Johnson's report provides an expert opinion on "whether

12  some or many of the person's tasks performed at the cash register counter could be performed

13  effectively and efficiently" while seated.  CVS moves to strike the report pursuant to Federal Rule of

14  Evidence 702, arguing that it is based on inadequate and irrelevant data, suspect observations, and

15  erroneous assumptions.[1]  Before addressing the merits of Plaintiff's certification motion, the Court

16  must consider CVS's challenge under *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

17  591 (1993), to Professor Johnson's expert report.[2]

18          *1.      Legal Standard*

19          Federal Rule of Evidence 702 provides:

20          A witness who is qualified as an expert by knowledge, skill, experience, training, or

21  _____

22          [1] In its reply brief in support of the motion to strike, CVS asks the Court to "disregard" a
    supplementary affidavit [Doc. No. 95] provided by Professor Johnson, filed by Plaintiff on November
23  11, 2011.  *Def. Reply ISO Motion to Strike*, Doc. No. 107.  According to CVS, "[t]hrough this
    declaration, Johnson seeks to offer [untimely] additional expert testimony not included in the Johnson
24  Report" in violation of the Court's scheduling order regulating discovery.  *Id.* at 2-3.  The Court found
    good cause to disregard the affidavit when considering the merits of the pending motions.  During the
25  April 2, 2012 hearing, defense counsel requested the Court consider striking the affidavit.  The Court
    declines to do so.

26          [2] While courts in this Circuit have previously concluded that expert testimony is admissible in
    evaluating class certification without conducting a rigorous *Daubert* analysis, the Supreme Court in
27  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011), expressed "doubt that this is so."  After
    *Dukes*, the Ninth Circuit approved the application of *Daubert* to expert testimony presented in support
28  of or opposition to a motion for class certification.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982
    (9th Cir. 2011).

education may testify in the form of an opinion or otherwise if:

    (a)   the expert's scientific, technical, or other specialized knowledge will help the
            trier of fact to understand the evidence or to determine a fact in issue;
    (b)   the testimony is based on sufficient facts or data;
    (c)   the testimony is the product of reliable principles and methods; and
    (d)   the expert has reliably applied the principles and methods to the facts of the
            case.

*See also United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).  Before admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 592-93; *see also Ellis*, 657 F.3d at 982 ("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable").  On a motion for class certification, it is not necessary that expert testimony resolve factual disputes going to the merits of plaintiff's claims; instead, the testimony must be relevant in assessing "whether there was a common pattern and practice that could affect the class as a whole."  *Ellis*, 657 F.3d at 983.

      To survive scrutiny under Rule 702, Professor Johnson's report must be (1) based upon sufficient facts or data, (2) be the product of reliable principles and methods, and (3) he must have applied the principles and methods reliably to the facts of the case.

      *2.    Analysis*

      Professor Johnson opines that: (1) a majority of the tasks that Clerk/Cashiers perform at the front-end register at a CVS retail store can be performed while seated, (2) that Clerk/Cashiers would benefit ergonomically from using a seat, and (3) that seats can be installed with low-cost modifications to provide adequate leg room.  Professor Johnson's education and professional qualifications are sufficient to lend him the required credibility and expertise to opine on ergonomic matters.  This credibility and expertise, and his specialized knowledge of ergonomic principles, combined with the research methodology he employed in this case, is sufficient to support his conclusions (1) that Clerk/Cashiers can perform the majority of their tasks behind the cash register seated, and (2) that they would benefit ergonomically from using a seat.

1    However, his conclusion (3) that seats can be installed with low cost modifications is not

2    supported by sufficient facts or data.  He conducted only two site inspections, of CVS stores in

3    Tulsa, Oklahoma.  Even if these stores were identical in configuration to at least one California

4    store, the inspections do not provide a sufficient basis for the general conclusion that seats can be

5    installed behind the cash registers with "low cost" modifications at CVS stores throughout

6    California, with sufficient leg room for the Clerk/Cashier to perform his or her duties in a seated

7    position.  Professor Johnson states in his report that he based this conclusion only on "the evaluation

8    of the tasks performed and the geometry of the cash register counters."  *Johnson Report* ¶ 46.  He

9    admitted in deposition that he did not take any measurements in the CVS stores, he did not engage in

10   any detailed investigation of the variations in available leg room at the individual stores, he did not

11   consult with a contractor about physically implementing such modifications, and he provides no cost

12   analysis.  As such, Professor Johnson's conclusion regarding the low cost of modifications appears

13   to be based on speculation and conjecture, rather than sufficient facts and data.

14        *3.    Conclusion*

15        In *Daubert*, 509 U.S. at 596, the Supreme Court recognized that "vigorous cross-

16   examination, presentation of contrary evidence, and careful instruction on the burden of proof are

17   the traditional and appropriate means of attacking shaky but admissible evidence."  Professor

18   Johnson's report, generally, is "shaky" evidence, the product of less than 40 hours of work and bare

19   personal observation.  However, the majority of the report withstands scrutiny under Rule 702.

20   Thus, the Court **AFFIRMS** its tentative ruling, **DENIES** CVS's motion to strike **IN PART**, and

21   declines to strike paragraphs 1 through 45, and 47, of the Johnson Report.  The Court **GRANTS** the

22   motion **IN PART**, and **STRIKES** the following statement from paragraph 46 of the report: "it is my

23   opinion that a seat could be easily incorporated with a low-cost modification to provide leg room."

24   ///

25   ///

26   ///

27   ///

28   ///

1

<u>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**</u>

2          After engaging in pre-certification discovery, Plaintiff filed her motion for class certification

3  on October 3, 2011.  As explained above, Plaintiff asserts that CVS violated Section 14(A) of Wage

4  Order 7-2001 by not providing seats to Clerk/Cashiers while they operated a front-end register, and

5  seeks to certify a class of "[a]ll persons who, at any time since June 9, 2008, were employed by CVS

6  as Clerk/Cashiers in California and were not provided with a seat while they operated a front-end

7  cash register."

8          *1.     Legal Standard*

9          Federal Rule of Civil Procedure 23 governs the certification of a class.  *See* FED. R. CIV. P.

10  23.  A plaintiff seeking class certification must affirmatively show the class meets the requirements

11  of Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  To obtain certification, a

12  plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a) –

13  numerosity, commonality, typicality, and adequacy.  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970

14  979-80 (9th Cir. 2011).  If these prerequisites are met, the Court must then decide whether the class

15  action is maintainable under Rule 23(b).  This case involves Rule 23(b)(3), which authorizes

16  certification when "questions of law or fact common to class members predominate over any

17  questions affecting only individual class members," and "a class action is superior to other available

18  methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

19          The Court is required to perform a "rigorous analysis," which may require it "to probe

20  behind the pleadings before coming to rest on the certification question."  *Dukes*, 131 S. Ct. at 2551.

21  "'[T]he merits of the class members' substantive claims are often highly relevant when determining

22  whether to certify a class.  More importantly, it is not correct to say a district court may consider the

23  merits to the extent that they overlap with class certification issues; rather, a district court must

24  consider the merits if they overlap with Rule 23(a) requirements."  *Ellis*, 657 F.3d.at 981.

25  Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually

26  prevail on the merits of their claims."  *Id*. at 983 n.8; *United Steel, Paper & Forestry, Rubber, Mfg.*

27  *Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802,

28  808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23

1    factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims.").

2         Here, the Court must determine: (1) whether Plaintiff has shown common questions of law or

3    fact sufficient to meet her burden under Rule 23(a), (2) whether Plaintiff has shown that these

4    common questions predominate over individual questions under Rule 23(b)(3); and (3) whether

5    Plaintiff has shown that a class action is the superior method of litigating her claim.

6         2.    *Analysis*

7              a)    Rule 23(a)

8         Plaintiff does not satisfy each of the four required elements of Rule 23(a).  While she

9    arguably satisfies the numerosity requirement based on her class definition (the proposed class is

10   approximately 17,000 employees), as well as the adequate representation requirement (she worked

11   for CVS, her counsel are experienced with class action, and they do not appear to have any

12   disqualifying conflicts), and even if the Court construes her claim as "typical" of other purported

13   class members, Plaintiff does not satisfy the commonality requirement.

14        In order to determine whether CVS's statewide policy of not providing Clerk/Cashiers a seat

15   while operating a front-end cash register violates Section 14(A) of Wage Order 7-2001, the Court

16   must inquire as to: (1) the "**nature of the work**" performed by Clerk/Cashiers at CVS; (2) whether

17   the nature of the work "**reasonably permits**" a seat to be used while the work is performed; and, if

18   so, (3) what is a "**suitable seat**."  The history of labor regulations and their enforcement in

19   California suggests these questions do not have answers common across Plaintiff's proposed class of

20   more than 17,000 CVS Clerk/Cashiers.

21        The IWC was authorized to regulate the wages, hours, and working conditions of various

22   classes of workers to protect their health and welfare, *Industrial Welfare Com. v. Superior Court*

23   (1980) 27 Cal.3d 690, 700–701, and when it was first created it could only regulate the working

24   conditions women and children (it expanded its coverage to men in 1973).  Originally, employers

25   faced criminal charges for failing to comply with the minimum labor requirements set forth in the

26   IWC's Wage Orders.  To impose criminal penalties and to prosecute violators necessarily required

27   an individualized inquiry as to whether the nature of a certain employee's work reasonably

28   permitted the aggrieved employee to use a seat suited to the conditions of the job and the

1  particularities of the employee.  Otherwise, the state would never have been able to meet its burden

2  of proof at a criminal trial.

3        The California Supreme Court, as early as 1912, opined on the need to regulate working

4  conditions of women and the constitutionality of such regulations.  In *Ex Parte Miller*, the employer

5  was remanded to the custody of the Riverside Sheriff to serve a term of incarceration for violating

6  "the provisions of the act of March 22, 1911, forbidding the employment of women in certain

7  establishments for more than 8 hours in one day, or more than 48 hours in one week.  Stats. 1911,

8  437.  The specific charge is that on June 12, 1911, he employed and thereupon required Emma Hunt,

9  a female, to work during that day for nine hours in the Glenwood Hotel as an employee therein."  *Id*.

10  The employer challenged the constitutionality of the regulation, which notably included a

11  requirement that female employees be given "suitable seats," as an overreaching exercise of the

12  state's police power.  The court rejected the argument, found the regulation constitutional, and in so

13  doing, explained:

14
15       [I]t has been recognized that some occupations followed by women, though less arduous
     than those generally followed by men, may have such a tendency to injure their health,
     if unduly prolonged, that laws may be enacted restricting their time of labor therein to
16       10 hours a day. The application of these laws exclusively to women is justified on the
     ground that they are less robust in physical organization and structure than men, that they
17       have the burden of childbearing, and, consequently, that the health and strength of
     posterity and of the public in general is presumed to be enhanced by preserving and
18       protecting women from exertion which men might bear without detriment to the general
     welfare.
19

20  *Ex parte Miller,* 162 Cal. 687, 695 (1912).  The *Miller* case illustrates the history and purpose of

21  labor regulations, their enforcement, and the penalties for violating them.  The regulations set forth

22  standard, minimum working condition requirements.  They were enforced by the state for health and

23  safety purposes – people could be fatally injured, and the state feared women might simply collapse

24  if forced to stand when they could reasonably sit and still perform their job.  Determining a

25  violation, and proving it in a court of law, required individualized inquiries and evidence sufficient

26  to meet a high burden of proof.  Employers who were found guilty were fined criminally, or even

27  went to jail.

28        As discussed in further detail below, the California Legislature has deputized individuals as

1    private attorneys general in order to promote continued enforcement of Labor Code violations

2    throughout the state, in a time when it has become infeasible for the various branches of state

3    government to do so, including the police.  That the enforcement of these violations has become a

4    civil matter does not change the nature of the task.  Otherwise, CVS could be held liable based on

5    the generally known fact that its Clerk/Cashiers sometimes operate cash registers, when they do so

6    they stand, and generally speaking, an individual can operate a cash register from a seated position.

7    This cannot be what the IWC intended when it promulgated Section 14(A), in light of the history

8    and purpose of these regulations.  More pointed inquiries are necessary.

9          For example, CVS offers proof that Clerk/Cashiers' job duties are inconsistent from day to

10   day, shift to shift, or even from store to store, which suggests the Court would need to engage in an

11   individualized, fact-intensive analysis to determine how each Clerk/Cashier spends his or her time to

12   decide whether "the nature of the work" done by that employee "reasonably permits" the use of a

13   "suitable seat."  In addition, the common question of whether modifications to existing CVS stores

14   would "reasonably permit" the use of a seat does not generate common answers.  CVS offers

15   credible declaration testimony that each CVS store is unique in size, layout, and configuration; there

16   are different check-out station styles at various stores and different configurations within those

17   check-out stations; the changes necessary to accommodate a seat at one particular check-out station

18   would not necessarily work at another register, and so on.  Such modifications necessarily require an

19   individualized analysis that is inappropriate for class wide resolution.

20         As the Supreme Court recently noted: "What matters to class certification . . . is not the

21   raising of common questions — even in droves — but, rather the capacity of a classwide proceeding

22   to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the

23   proposed class are what have the potential to impede the generation of common answers." *Dukes*,

24   131 S. Ct. at 2551 (internal quotations and citations omitted).  This is just such a case, and as a

25   result, Plaintiff cannot satisfy the commonality requirement of Rule 23(a).

26         b)    Rule 23(b)(3)

27         Plaintiff seeks class certification under Rule 23(b)(3).  A class action may be maintained

28   under Rule 23(b)(3) if two tests are met: first, if "questions of law or fact common to class members

predominate over any questions affecting only individual members," and, second, if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The predominance requirement is a more rigorous requirement than the Rule 23(a)(3) commonality prerequisite. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). As noted above, Plaintiff has not shown the common questions she asserts are capable of common resolution. If she cannot meet the less stringent commonality requirement of Rule 23(a), she certainly cannot meet the predominance requirement of Rule 23(b)(3).

Even if Plaintiff could meet the requirements of commonality and predominance, she must also demonstrate that a class action would be a superior method of resolving this controversy. A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). It is also superior when no "realistic alternative exists." *Id.* at 1234-35. Here, that is not the case. Plaintiff may pursue her PAGA claim as a non-class representative action. *Arias v. Superior Court*, 46 Cal. 4th 969 (2009) (holding that an employee may bring a representative action against an employer for civil penalties under PAGA and need not satisfy class action requirements to do so).

### 3. Conclusion

In sum, Plaintiff fails to satisfy the commonality requirement of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). Accordingly, the Court **AFFIRMS** its tentative ruling and **DENIES** Plaintiff's motion for class certification.

**IT IS SO ORDERED**.

DATED: April 4, 2012

Hon. Michael M. Anello
United States District Judge