# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKEYA KILBY,<br><br>                    Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC.,<br><br>                    Defendant. | CASE NO. 09cv2051-MMA (KSC)<br><br>**ORDER GRANTING DEFENDANT CVS PHARMACY, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 113] |

Plaintiff Nykeya Kilby seeks to recover penalties pursuant to the California Labor Code Private Attorney General Act of 2004 ("PAGA") against her former employer, Defendant CVS Pharmacy, Inc.  This action is currently before the Court on CVS's motion for summary judgment.  After considering the oral arguments of counsel and all pertinent matters of record, the Court **GRANTS** CVS's motion.

## **PLAINTIFF'S PAGA CLAIM**

Plaintiff Nykeya Kilby is a resident of Chula Vista, California, and a former employee of CVS, where she worked as a Customer Service Representative ("Clerk/Cashier" hereafter) for approximately eight months.  Plaintiff seeks civil penalties against CVS for allegedly violating California Labor Code § 1198, which makes it illegal to employ a person under

conditions of labor prohibited by an applicable Industrial Welfare Commission ("IWC") Wage Order.[1] *See* First Amended Complaint ("FAC"), Doc. No. 6. Specifically, Plaintiff alleges that CVS violated a condition of labor by failing to provide its Clerk/Cashiers with suitable seats, contrary to Wage Order 7-2001, § 14(A). Section 14 of Wage Order 7-2001 states:

> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

Cal. Code Regs. Tit. 8 § 11070(14) ("Section 14").

According to Plaintiff, the nature of Clerk/Cashier work at CVS reasonably permits the use of seats because: (a) CVS places its cash registers at fixed locations within its stores; (b) operating a cash register requires the employee to remain in reasonably close proximity to the cash register; (c) many of the tasks the employee performs while stationed at a cash register, including scanning merchandise, receiving payment, making change, and waiting for customers, could be performed from a seated position; and (d) the cash register stations at CVS could accommodate the placement of a seat or stool of some kind. FAC ¶ 14.

### **RELEVANT FACTUAL BACKGROUND**

The following material facts are not reasonably in dispute. CVS operates approximately 850 retail pharmacy stores in California. CVS is committed to providing excellent service to its customers. Plaintiff joined CVS as a Clerk/Cashier in March 2008. When interviewing for the job, Plaintiff's interviewer explained the expectation that she stand while working, including while operating the cash register. Once hired, Plaintiff viewed training videos which reinforced the expectation that Clerk/Cashiers are expected to do a variety of work while standing.

---

[1] Because Section 1198 does not contain its own civil penalty provision, Plaintiff seeks to recover the "default" penalties set forth in Section 2699(f) of PAGA.

According to CVS's Clerk/Cashier job description, the essential functions of the job include:

- operate a cash register including cash transactions, checks, charges
- follow company policies and procedures regarding cash register performance
- request additional help when needed to increase customer satisfaction
- greet each customer using the eye's, hi's and help at all times and assist customers with their questions, problems and complaints
- price merchandise utilizing price guns
- store cleanliness: break area and rest rooms; vacuum; dust/face; clean windows; rubbish removal; exterior maintenance; sweeping
- stock shelves
- complete price changes: document counts, utilize price guns
- answer the telephone using the appropriate greeting
- process photofinishing orders
- maintain check-out area: fill register supplies, bags; wipe counter tops; fill cigarettes
- issue rainchecks when requested
- react to potential shoplifters following company guidelines
- maintain customer/patient confidentiality

Marginal functions of the job include:

- maintain card department: order, stock, inventory, signing
- maintain cosmetic department/units: clean, stock, set displays, sign, prepare returns (UPP system)
- reset departments/endcaps following POGs
- display and sign weekly, promotional and seasonal merchandise
- prepare damages: document counts and item numbers, seal trays
- in-store signing, including: shelves, displays, dump baskets, windows, ceiling
- assist Pharmacy personnel when needed
- complete minor in-store repairs i.e., carriage poles, change light bulbs
- work out reserve stock
- assist customers with large purchases (taking out to vehicle)
- unload and load trays/cases - 35 pound maximum to a height of 4 feet
- move trays/cases from one location to another

The tasks actually performed by any particular Clerk/Cashier vary from store to store, and from shift to shift. During her tenure at CVS, Plaintiff performed a number of the job

functions listed above, including operating a cash register, straightening and stocking shelves, organizing candy and batteries in front of the sales counter, stocking the tobacco section behind the sales counter, cleaning the register, vacuuming, gathering shopping carts and hand baskets, and handling trash.  Plaintiff did not perform any of these tasks while seated.  According to Plaintiff, many of these tasks could not be performed while seated, including certain duties while operating the cash register.  Plaintiff typically worked four or five days per week, during the 5:00 p.m. to closing shift.  CVS terminated Plaintiff for job abandonment on October 2008.

## MOTION FOR SUMMARY JUDGMENT

CVS moves for summary judgment, arguing that Plaintiff cannot prevail on her claim as a matter of law because Section 14(A) does not apply to the Clerk/Cashier position at CVS stores.  Specifically, CVS contends the nature of the work performed by a Clerk/Cashier does not reasonably permit the use of a seat.  In addition, CVS asserts its business judgment that Clerk/Cashiers should stand while working in order to provide satisfactory customer service is entitled to deference.[2]  Plaintiff opposes the motion, arguing that there is a triable issue of fact as to whether the nature of the work performed by a Clerk/Cashier reasonably permits the use of a seat.

*1.     Legal Standard*

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law.

---

[2] CVS also argues that Plaintiff's claim fails because she never requested a seat while working and because PAGA is unconstitutional.  Because it resolves CVS's motion on the dispositive issue of whether Section 14(A) applies to the Clerk/Cashier position, the Court declines to rule on the merits of these two assertions.  However, the Court notes that, to date, only one court has read a requirement into Section 14(A) that an employee affirmatively request a seat, *Green v. Bank of Am. N.A.*, No. CV 11-45751-R (C.D. Cal.), and constitutional challenges to PAGA have been uniformly rejected by other courts.  *See, e.g., Echavez v. Abercrombie and Fitch Co., Inc.*, No. CV 11-9754 GAF (PJWx) (C.D. Cal. Mar. 12, 8 2012) (rejecting *Green* court's reasoning regarding requirement that employee request a seat; collecting and analyzing relevant cases regarding constitutionality of PAGA).

1  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the
2  evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.
3  In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be
4  believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.

5        The burden initially is on the moving party to demonstrate an absence of a genuine
6  issue of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its
7  burden, then the non-moving party must produce enough evidence to rebut the moving
8  party's claim and create a genuine issue of material fact.  *Id*. at 322-23.  If the non-moving
9  party meets this burden, then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v.*
10 *Fritz Co., Inc*., 210 F.3d 1099, 1103 (9th Cir. 2000).  The moving party's burden may also be
11 met by showing that there is an absence of evidence to support the non-moving party's case.
12 *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  Once the moving
13 party has met its initial burden, Rule 56 requires the non-moving party to go beyond the
14 pleadings and identify facts which show a genuine issue for trial.

15     *2.*    *Analysis*

16       As a threshold matter, CVS argues that Plaintiff cannot prevail on her claim as a
17 matter of law because Section 14(A) does not apply to the Clerk/Cashier position at CVS
18 stores.  According to CVS, if the "nature of the work" requires standing, subsection (B)
19 applies.[3]  If the "nature of the work" reasonably permits the use of seats, subsection (A)
20 applies.  CVS argues that the phrase "nature of the work" should be considered holistically.
21 Thus, to determine whether it must comply with subsection (A) or (B), an employer must
22 consider the nature of an employee's job as a whole, factoring in the myriad duties that an
23 employee may perform during a shift, to determine whether the "nature of the work"
24 generally requires standing, or reasonably permits the use of seats.

25       Plaintiff rejects CVS's interpretation of Section 14, arguing that the phrase "nature of

---

[3] Although its compliance with Section 14(B) is not at issue in this case, CVS states for the record that it complies with subsection (B) by providing seats for its employees in the employee break room for use during an employee's rest break or meal break, when the employee is not actively engaged in his or her work duties.

the work" is properly understood as referring to any particular duty that an employee performs during the course of her work.  In this case, Plaintiff asserts that the job duty at issue, operating a cash register, is of such a nature that an employee could perform the work while seated.

The parties insist, and the Court agrees, that their different interpretations of the phrase "nature of the work" are critical to the outcome of this case.  If the Court accepts Plaintiff's interpretation, her claim may succeed if she is able to demonstrate that Clerk/Cashiers can operate a cash register while seated.  If the Court adopts CVS's holistic approach, Plaintiff's claim is foreclosed because Clerk/Cashiers are expected to, are trained to, and in fact must stand to perform most of their other job duties.

Because "IWC wage orders are 'quasi-legislative regulations' that must be construed 'in accordance with the ordinary principles of statutory interpretation,'" the Court first considers the text of Section 14 itself.  *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 825 (9th Cir. 2011) (citations omitted).  "Statutory interpretation begins with the text of the statute.  The statute's words must be assigned their 'usual and ordinary meanings' and evaluated in context.  If this plain meaning is unambiguous, the inquiry ends there and we need not consider further interpretive aids (e.g., drafting history).  The plain meaning governs."  *Campbell*, 642 F.3d at 826 (citations omitted).

Subsection (A) provides: "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats."  The Ninth Circuit recently held in *Campbell v. PricewaterhouseCoopers*, *supra*, that the IWC's use of "highly inclusive" language such as the word 'all' "frames its application in terms of individual employees," giving effect to the IWC's intention that wage orders regulate the working conditions of all employees, while being enforceable against employers for a single violation against any individual employee.  However, while it begins with "highly inclusive" language, subsection (A) is not unqualified.  Later language within the text of the subsection serves to limit its application to only those instances when "the nature of the work reasonably permits the use of seats."  This qualification necessarily means that no individual employee is

1  excluded from its provision – unless that employee is performing a certain type of job, i.e., a
2  job that cannot be performed while seated.  This is a relatively straight forward idea.  No
3  employee or group of employees should be singled out and forced to do their work while
4  standing, if the work can be done while seated.  Subsection (A) protects the needs of the
5  employee by ensuring uniformity in its application.

6  In direct contrast to subsection (A), subsection (B) is limited to only those instances
7  when "the nature of the work requires standing."  Subsection (B) does not contain "highly
8  inclusive" language such as 'all' employees.  It conditions the use of a seat on the employee
9  "not being engaged in the active duties of their employment."  Later language further limits
10 an employee's use of a seat to only those times "when it does not interfere with the
11 performance of their duties."  Thus, while subsection (A) concerns only the needs of the
12 employee, subsection (B) attempts to strike a balance between the employee's needs and the
13 requirements of the job.

14 In addition, the structure of Section 14 is noteworthy.  Section 14 contains no
15 conjunction or disjunctive between subsections (A) and (B), and each subsection is
16 comprised of a single sentence.  In such instances of statutory construction, "[e]ach clause is
17 distinct and ends with a period, strongly suggesting that each may be understood completely
18 without reading any further."  *Jama v. Immigration & Customs Enforcement*, 125 S. Ct. 694,
19 701 (2005).  When both subsections are given full and independent effect, Section 14
20 establishes a dichotomous approach for employers to follow, based on the "nature of the
21 work" involved.  The subsections are mutually exclusive.

22 This statutory construction is at odds with Plaintiff's suggestion that the "nature of the
23 work" can be defined in terms of any one of a number of included job duties, because then a
24 single employee could fall under the ambit of both sections during the course of a single shift
25 based on which job duty she was performing at the time.  If the IWC had intended for an
26 employee to be protected by both subsections simultaneously, it could have easily placed a
27 linking adverb between the two subsections.  It also could have chosen to use different
28 terminology.  Subsection (B) provides that "[w]hen employees are not engaged in the ***active***

*duties* of their employment <u>and</u> the ***nature of the work*** requires standing," the employer must provide suitable seats in reasonable proximity to the work area for employees to use "when it does not interfere with the performance of their *duties*." (emphasis added).  The IWC clearly felt it necessary to delineate between the overall "nature of the work" an employee does and the "duties" that work may encompass.  Thus, Plaintiff's assertion that the Court should interpret the "nature of the work" in this case to be limited in scope to the single duty of operating a cash register is without merit.  Rather, operating a cash register is more properly considered a "duty" of employment as a Clerk/Cashier.

Based on the language and structure of Section 14, the "nature of the work" performed by an employee must be considered in light of that individual's entire range of assigned duties in order to determine whether the work permits the use of a seat or requires standing. Here, there is no dispute that many of the duties performed by Clerk/Cashiers at CVS require the employee to stand while performing them, i.e., stocking shelves, assisting customers with locating items in areas of the store away from the cash registers, sweeping or other cleaning, retrieving items from high shelves, fetching photographs and cigarettes from other parts of the store, and so on.

Furthermore, CVS asserts that if there is any doubt that the nature of Plaintiff's work required her to stand, the Court should defer to CVS's business judgment about its expectations of Plaintiff's job.  CVS expects its Clerk/Cashiers to perform their work while standing, and trains them to do so.  Plaintiff argues that CVS cannot be allowed to use its "business judgment" to portray a job in such a way that it can avoid a Wage Order's requirements as to when an employer must provide suitable seats.  CVS replies that an employer's legitimate business expectations for a job are relevant when defining the "nature of the work" of that job, such that if CVS hires employees to stand while working a cash register because CVS wants to project a certain image, then those employees would not be performing their job if they were seated.  The "nature of the work" is not just to complete transactions, but also to project CVS's desired image of an attentive employee.

It is quite obvious that a company's "business judgment" plays a role in defining the

contours of a job and its incumbent duties. Thus, it stands to reason that courts should consider an employer's "business judgment" when attempting to discern the nature of an employee's work. While the Court does not find that CVS's business judgment in this respect is necessarily entitled to deference, CVS's expectation of its Clerk/Cashiers is undoubtedly relevant to understanding the nature of a Clerk/Cashier's work. Here, CVS presents undisputed evidence that it expects Clerk/Cashiers to perform the majority of their job duties while standing, and consistent with this expectation, Plaintiff was trained to perform her duties while standing.[4]

For example, during her training Plaintiff watched a video entitled "This Is What We're All About." *See Weil Decl'n ISO MSJ*, Ex. D. The video provides new applicants with an overview of the Clerk/Cashier position, while making clear that "as a potential CVS employee of all the things we're going to ask you to do, providing great customer service is most important." *Id*. at 64. In describing the duties of a Clerk/Cashier, the video provides:

> And whether you're working days, nights, weekends or holiday, there's always something to do. Not all of it is glamorous. There are deliveries to take care of, shelves and displays to be cleaned or straightened, vacuuming and trash that needs to be taken care of. Sometimes you're going to be doing some lifting and sometimes you're going to get dirty. It's just part of keeping the store clean. And in our business everyone works the cash registers. After all, from a customer service standpoint it's one of the key areas of your store. We'll need you to help pick up in the parking lot. Other times you'll need to clean the restroom. We're known for maintaining stores that are well run, neat and clean and that's how we do it. It's hard work behind the scenes and sometimes you will be on your feet for long periods of time, but these are things that need to be done all the time.

*Id*. CVS informs its employees from the start that they are expected to place a premium on customer service. In order to provide the best service possible, CVS employees are trained to be ready to perform any one of a multitude of job duties that require being on their feet.

---

[4] Recently, another court considered this issue. In *Garvey v. Kmart Corp.,* 2012 U.S. Dist. LEXIS 51705 *11 (N.D. Cal. Apr. 12, 2012), Kmart argued that "it would be unreasonable to provide seats because [Kmart] has a legitimate business purpose in making its cashiers project a "ready to serve" image by standing." The court found that issues of material fact precluded summary judgment because Kmart's store manager testified during his deposition that the cashiers could provide good customer service while seated. *Id*. The court relied on evidence that operating the cash register was the cashier's primary job unless they were putting away returned items, as well as a manager's estimate that approximately 90 percent of a cashier's work would be performed behind the cash register.

1 Plaintiff's own experience bore out this aspect of her position as a Clerk/Cashier. Plaintiff 2 testified that she was informed during her interview that she would perform her duties while 3 standing, including while operating the cash register. Plaintiff further stated that she stood 4 while performing all of her job duties, and many of those duties could not be performed 5 while seated.[5] *Weil Decl'n*, Ex. A., p.44-46; 48.

6       By its plain terms, subsection (B) applies when the nature of the work "requires 7 standing." If, as here, the majority of an employee's assigned duties must physically be 8 performed while standing, and the employer expects and trains the employee to stand while 9 doing so, the "nature of the work" requires standing. Thus, based on the plain language of 10 Section 14, and in light of the undisputed facts of this case, subsection (B) is applicable to the 11 Clerk/Cashier position at CVS stores. Subsection (A) is not.

12       Having determined that Section 14(A) of Wage Order 7-2001 does not regulate the 13 working conditions of Clerk/Cashiers at CVS, the Court finds that summary judgment in 14 favor of CVS is appropriate.

15 <center>**CONCLUSION**</center>

16       Based on the foregoing, the Court **GRANTS** Defendant CVS Pharmacy, Inc.'s motion 17 for summary judgment. This Order disposes of Plaintiff's single PAGA claim. The Clerk of 18 Court is instructed to enter judgment in favor of CVS and terminate the case.

19     **IT IS SO ORDERED**.

20 DATED: May 31, 2012

21

22                                       Hon. Michael M. Anello
                                      United States District Judge

---

[5] The Court notes that according to Plaintiff, she could have performed some of her duties while seated and would have performed those duties better than while standing. *Weil Decl'n*, Ex A., p.42. When asked why she thought she could have performed her job duties better while seated, Plaintiff responded "[b]ecause it would give me relief from standing for so long." *Id*. at 43. Clearly, Plaintiff would have preferred to sit while working. However, Plaintiff's personal preference on the matter is not helpful in determining whether the nature of her work reasonably permitted her to sit.