JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA M. LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Tel: (760) 209-6565 x 101
Fax: (760) 209-6565

KEVIN J. MCINERNEY (46941)
kevin@mcinerneylaw.net
18124 Wedge Parkway, #503
Reno, Nevada 89511
Tel: (775) 849-3811

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKEYA KILBY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>CVS PHARMACY, INC.<br><br>    Defendant. | CASE NO. 09-CV-2051-MMA-KSC<br><br>**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE PLAINTIFF'S THIRD SET OF INTERROGATORIES AND PLAINTIFF'S FOURTH SET OF DOCUMENT REQUESTS**<br><br>Judge:   Hon. Karen S. Crawford |

## I.  SERVICE

Plaintiff Nykeya Kilby ("Plaintiff") served a copy of her portion of this motion on defense counsel five days before filing the motion.

## II.  INTRODUCTION

### A.    Plaintiff's Introductory Statement.

This discovery dispute arises in the context of Plaintiff's claim that her former employer, defendant CVS Pharmacy, Inc. ("Defendant" or "CVS"), failed to provide Plaintiff and other similarly-situated employees with suitable seats. Plaintiff held the position of "Clerk/Cashier" and testified that she spent the majority of her time at a front-end register checking out customers. The

OHSUSA:766173792.3

regulation alleged to have been violated is California Wage Order 7-2001, Section 14(A). That provision states: "All working employees shall be provided with a suitable seat when the nature of the work reasonably permits the use of a seat."  Plaintiff's lawsuit seeks civil penalties on behalf of all Clerk/Cashiers employed in California who were not provided with seats pursuant to the Labor Code Private Attorneys General Act (PAGA), Labor Code § 2698 *et seq.*

Plaintiff filed her lawsuit on September 18, 2009. The statute of limitations extends back to one year preceding the date she served her original pre-litigation PAGA notice under Labor Code § 2699.3, which was June 6, 2009.  (McInerney Dec. ¶ 5.)

The District Court denied class certification on April 4, 2012 and granted summary judgment in favor of CVS shortly thereafter on May 31, 2012. *See Kilby v. CVS Pharmacy, Inc.*, 2012 U.S. Dist. LEXIS 47855 and 2012 U.S. Dist. LEXIS 76507. On appeal, the Ninth Circuit did not initially render an opinion, choosing instead to certify questions regarding the interpretation of Section 14(A) to the California Supreme Court. On April 4, 2016, that Court answered the certified questions in *Kilby v. CVS Pharmacy, Inc.*, 63 Cal.4th 1 (2016). On June 8, 2016, the Ninth Circuit reversed and remanded the District Court's class certification and summary judgment orders.

On September 13, 2016, this Court set a class certification discovery cut-off date of February 27, 2017. This includes expert discovery as well as fact discovery. Because CVS asserts that the nature of a Clerk/Cashier's work does not reasonably permit the use of a seat, both sides are likely to utilize experts, as they did in 2011, to assert that check stand configurations can or cannot allow use of a seat. With expert disclosures just two months away, Plaintiff feels that full substantive responses to her propounded discovery are needed promptly. Plaintiff's Fourth Request for Production of Documents, Nos. 41-54 and Plaintiff's Third Set of Interrogatories, Nos. 17-25 were mailed to defense counsel on September 19, 2016 by Mr. Clapp's office.

The class definition in this action is: "All persons who during the applicable statute of limitations, were employed by CVS as cashiers in the State of California and were not provided with a seat to use while they operated a cash register." Accordingly, the class period now extends

OHSUSA:766173792.3

1    over eight years—from June 6, 2008 to the present. However, discovery ceased over five years

2    ago and was stayed because of the protracted appeal process. Discovery that took place in 2011

3    could not have produced evidence of policies and practices that have occurred over the last five

4    years.  For instance, it is undisputed that during the intervening years CVS has remodeled the

5    checkout stations in many of its 850 California stores. However, Plaintiff does not know in what

6    fashion or in how many stores. These eight interrogatories and fourteen document requests were

7    designed to allow Plaintiff to respond to the defenses CVS has raised in the past (and has not said

8    it is abandoning) with objective concrete evidence.

9           The chronology of the meet and confer process is set forth in the Declaration of Kevin J.

10   McInerney, filed concurrently herewith. Plaintiff's Fourth Request for Production of Documents

11   and Plaintiff's Third Set of Interrogatories were served by mail on September 19, 2016. Defendant

12   served its response by mail on October 24, 2016. The earliest any of Plaintiff's counsel received

13   these responses was October 27, 2016.[1] On November 7, 2016, one of Plaintiff's counsel, Kevin J.

14   McInerney, sent defendant's counsel Michael Weil an email suggesting five possible meet and

15   confer dates. The first meet and confer took place on November 9, 2016 and lasted 90 minutes.

16   On November 15, 2015, Mr. McInerney scheduled a follow-up call with Mr. Weil for

17   November 19; however, due to a scheduling conflict, Mr. Weil moved the meeting to November

18   21, 2016.  On November 19, 2016, Mr. McInerney sent Mr. Weil a two-page email that included

19   in more detail how providing information about the requested checkout configurations might be

20   streamlined. The second meet and confer took place on Monday, November 21, 2016 and lasted

21   approximately 15 minutes. At the end of the call, Mr. Weil said that he wanted to discuss the

22   issues with his client.  On December 1, 2016, Mr. McInerney and Mr. Weil had a third phone call,

23   which lasted for approximately 65 minutes.  The parties were unable to resolve their disputes.  As

24   _____

25   [1]      Although the discovery was propounded by Mr. Clapp's office, CVS misdirected its
     responses to an old address of Mr. Clapp's former law firm.  Mr. Clapp had provided the Court
26   and CVS' counsel with his current address on January 12, 2016 (*see* Dkt. 149), and Mr. Clapp's
     current address was on the caption page of the discovery requests.  Mr. Clapp never received
27   CVS' discovery responses and did not learn they had been served until November 6, 2016.

28
                                                    3
     _____
                JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
                            CASE NO. 09-CV-2051-MMA-KSC
     OHSUSA:766173792.3

1   of this writing, CVS has not provided any documents or any substantive responses to any of

2   Plaintiff's discovery requests.  (McInerney Dec. ¶¶ 1-18).

3   **B.      Defendant's Introductory Statement.**

4         **1.      Defendant Has Already Produced A Substantial Amount of Discovery.**

5       Plaintiff filed this lawsuit on September 18, 2009, alleging that she and a class of similarly-

6   situated individuals employed by CVS in California as "Clerk/Cashiers" were entitled to seating

7   while performing their cashiering duties under Section 14 of California's IWC Wage Order 7-

8   2001.  In the two following years, Plaintiff sought and received extensive written discovery from

9   CVS, including:

10   - The names and contact information for almost ***3,500*** putative class members;

11   - Approximately 1,700 pages of documents, including documents reflecting some of the
12     checkout station designs used in some CVS California stores;

13   - Interrogatory responses regarding the responsibilities, duties and expectations of the
14     Clerk/Cashier position;

15   - A sampling of photographs and measurements of cash stands from a cross-section of
16     20 stores throughout California (*e.g.,* Santa Clara, Los Angeles, Chico, Rancho
      Cordova, Red Bluff, Solana Beach, Walnut Creek, Rohnert Park) (*see* Declaration of
17     Michael D. Weil, December 12, 2016 ("Weil Dec."), Ex. A (Dec. of Mitch Ferguson
      ("Ferguson Dec."));

18   - Job descriptions, operations manuals, training manuals, and training videos;

19   - Documents specific to Plaintiff's employment (including time punch report and
20     personnel file);

21   - Human resources policies and related documentation.

22   Weil Dec. ¶¶ 3-4.  During that same timeframe, Plaintiff also took nine (9) depositions, including:

23   - CVS's Vice President of Store Operations (Hank Casillas);

24   - CVS's Area Human Resources Director for Area 18 (Sandy Reynoso).   Area 18
25     encompassed Northern California and south to approximately Bakersfield;

26   - A CVS Employee Relations Manager (Pamela Larrabee);

27   - Two CVS Regional Managers (Ken Mahoney and Doug Palmieri);

28

OHSUSA:766173792.3

- A CVS Store Manager (Doug Leibelt);

- Corporate representative depositions pursuant to FRCP 30(b)(6) regarding more than 20 different topics.  These topics were handled by:  (a) CVS's Manager of Store Layout and Design; (b) CVS's Director of Environmental Health & Safety; (c) CVS's Manager of Training and Development.  The topics included, among other topics:

  o CVS's expectations regarding the physical job requirements of the Clerk/Cashier position, particularly ergonomics and safety issues;

  o The organizational structure of CVS;

  o Job duties, responsibilities, and activities of Clerks/Cashiers;

  o The amount of time, on average, that employees operate the cash register;

  o Facts and circumstances surrounding any situation in which a Clerk/Cashier operated a cash register from a seated position;

  o The physical layout of CVS retail stores, including the layouts of different cash register stations;

  o CVS' policies and procedures concerning the operation of a cash register;

  o Training provided to employees regarding the operation of a cash register;

  o Plaintiff's employment, job performance, job duties, and responsibilities

*Id.* ¶ 4.

After completing her discovery, Plaintiff filed a motion for class certification on October 3, 2011.  On April 4, 2012, the Court denied Plaintiff's motion for class certification, finding that Plaintiff—despite all of her discovery efforts—failed to establish commonality among the 17,000 clerk/cashiers who worked across hundreds of unique stores.  Dkt. 131, pages 9-10.

As the Court explained, one basis for denying class certification was the inconsistent experiences among the putative class along with "credible" testimony about the variations in store and checkout station designs, which supported the conclusion that each claim for seating would require individualized analysis.  *Id.*, page 9.  The Court thereafter granted CVS's motion for summary judgment and dismissed Plaintiff's individual claim based partly on her admission that "many of [her] tasks could not be performed while seated, including certain duties while operating the cash register."  Dkt. 136, page 10.

Plaintiff appealed both orders to the Ninth Circuit which, in turn, certified questions to the California Supreme Court.   On June 8, 2016, the Ninth Circuit issued an order reversing this court's orders to reconsider the issues in light of the California Supreme Court's opinion.

Although Plaintiff already received substantial information from CVS about CVS's cash stands and policies regarding seating, Plaintiff seeks to broaden the scope of her discovery in this secondary phase.   Where reasonable, CVS has provided additional information, including serving another 1,820 pages of documents including:

- A list of stores with addresses and phone numbers;

- Updated policies and procedures;

- An updated employee handbook;

- Employee orientation materials;

- CVS Code of Conduct guides;

- Register training documents; and

- Floorplans and diagrams of more than 130 CVS stores.

Weil Dec. ¶ 7.

### 2.       Plaintiff Cannot Justify the Overbroad Discovery She Seeks.

Prior to certification of a class, some discovery regarding the class may be appropriate. However, to seek broad-ranging discovery, Plaintiff carries the burden of making either a *prima facie* showing that the requirements of Federal Rule of Civil Procedure 23(a) to maintain a class action have been met or "that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Maes v. JP Morgan Chase*, 2013 U.S. Dist. LEXIS 29949, at *4 (S.D. Cal. Mar. 5, 2013) (same).  Plaintiff cannot do either here.

As the California Supreme Court clarified, the focus of the suitable seats inquiry under Section 14 of the Wage Orders is on the location where the work is performed.   *Kilby v. CVS Pharmacy, Inc.,* 63 Cal. 4th 1, 18 (2016) ("nature of the work" "examine[s] subsets of an

OHSUSA:766173792.3

1  employee's total tasks and duties by location [...] and consider[s] whether it is feasible for an

2  employee to perform *each set of location-specific tasks* while seated") (emphasis added).  Federal

3  courts that have looked at this issue have held that "physical layout is a critical factor in

4  determining whether the nature of class members' work reasonably permits the use of seats."

5  *Tseng v. Nordstrom, Inc.*, 2014 U.S. Dist. LEXIS 5893, at *17-18 (C.D. Cal. Jan. 15, 2014).

6  Where the layouts and configurations of the physical layouts vary widely, as here, class

7  certification is inappropriate.  *Id*. at *22 (denying class certification "because these layouts and

8  dimensions vary so widely from store to store, adjudicating this case would require, in effect, a

9  separate mini-trial for each California Nordstrom store").

10  Given the indisputably wide variations in CVS's store layouts, Plaintiff cannot

11  demonstrate a *prima facie* showing for class certification or that the discovery she seeks is likely

12  to show a substantiation of the class allegations.  As explained in more detail below, some of

13  Plaintiff's new discovery requests ask CVS to send someone to visit each of its 870 current stores

14  throughout California to measure each cash stand and areas around the stand, to describe the cash

15  stand, and to explain for each cash stand CVS's position regarding why the nature of the work

16  does not permit the use of a seat.  This would take months to do and is inconsistent with the notion

17  that this lawsuit can be adjudicated through representative testimony or is manageable. Indeed,

18  requiring someone to do so would not substantiate the class allegations, but would reconfirm that

19  there is no commonality present in this case. In addition, although Plaintiff has contact

20  information for almost 3,500 putative class members, she now demands that CVS provide the

21  same for even more.   As explained below, CVS has offered many reasonable compromises, but

22  Plaintiff has not accepted any.

23  III.   **DISCOVERY DISPUTE REGARDING PLAINTIFF'S THIRD SET OF**

24  **INTERROGATORIES, NOS. 17-25**

25  **Interrogatory No. 17:**

26  On page 3 of Defendant's Opposition to Plaintiff's Motion for Class Certification

27

28

("Opposition"),[2] defendant states: "There are many types of cashier stands and configurations at CVS."  For each CVS store that has been open in California at any time between June 9, 2008 and the present, DESCRIBE the cashier stand(s) and configuration(s) at that store.  (DESCRIBE means state the store number and location and then explain the casher stand(s) and configuration(s) in detail, including without limitation the "type" and "subtype" of configuration in that store as you used those terms on pages 8-9 of the Opposition.)

**Response to Interrogatory No. 17:**

Defendant objects to this Interrogatory as vague and ambiguous, including but limited to the terms or phrases "DESCRIBE," "explain," and "in detail." Defendant objects to this Interrogatory as overbroad because the relevant time period begins on September 18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this Interrogatory as overbroad, unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Interrogatory because it is duplicative and cumulative of Plaintiffs prior discovery requests, including Request for Production Nos. 13 and 34 (see, e.g., CVSOO1621-CVSOO1627). Defendant objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the foregoing specific and general objections, Defendant responds as follows: Defendant will provide a substantive response after Plaintiff significantly narrows the scope of this Interrogatory following an appropriate meet and confer.

**Plaintiff's Position Regarding Interrogatory No. 17:**

Federal Rules of Civil Procedure, Rule 26(b)(1) provides that a party may obtain discovery

---

[2]    Dkt. 77, page 8.  For the sake of clarity, Plaintiff will refer to the page numbers inserted by the ECF system at the top of the page.

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.*; *Hernandez v. Best Buy Co.*, 2014 U.S. Dist. LEXIS 147630, *9 (S.D. Cal. Oct. 15, 2014). In a class action case, the named plaintiff is generally entitled to take discovery to prove the elements of class certification. *See Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977) ["It is true that the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant."]

To the extent Plaintiff must make a prima facie showing that the elements of Rule 23 are satisfied before obtaining class discovery (*see Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1984)), Plaintiff has already done so in her first motion for class certification. (*See* Dkt. 63-66, filed October 3, 2011.) With regard to numerosity (Rule 23(a)(1)), as of 2011, the class consisted of at least 17,000 current and former Clerk/Cashiers. *See* Dkt. 63-12, page 3 [CVS' response to Interrogatory No. 3]. Regarding commonality and predominance (Rule 23(a)(2) and (b)(3)), CVS has a common, company-wide policy of not providing seats to its Clerk/Cashiers. *See* Dkt. 64-3 [deposition of CVS' Area Human Resources Director, Sandy Reynoso], pages 3, 7-8. Furthermore, the job a Clerk/Cashier is similar from store-to-store. There is a single job description that sets forth the essential functions of Clerk/Cashiers, and the first such function is to "operate a cash register including cash transactions, check and charges." *See* Dkt. 64-5 [job description], page 2. Processing a transaction consists of standardized steps including taking the merchandise from the customer, scanning the bar code, bagging the merchandise, accepting payment, and then handing the bagged merchandise and receipt to the customer. *See* Dkt. 64-2 [deposition of CVS' Regional Manager, Doug Palmieri], pages 8-9. Clerk/Cashiers receive standardized training in how to operate a cash register. *See* Dkt. 64-2 [Palmieri], page 13; Dkt. 64-6 [Register Training]. In addition, CVS stores share similar cash register layouts. According to CVS' regional manager Ken Mahoney, who was responsible for 164 California stores, there are

OHSUSA:766173792.3

generally three different types of cash register configurations at CVS: (1) "pass-through" (like a checkout line at a grocery store); (2) "bench" or "counter" (where the cash registers are positioned side-by-side along the front wall of the store; and (3) "bullpen" (where the registers are placed in a U-shaped or square-shaped checkout area the front of the store).  *See* Dkt. 64-1, pages 3-8. Further establishing commonality and predominance, Plaintiff submitted 30 declarations from Clerk/Cashiers who worked in various cash register configurations throughout California.  Seven of them testified they successfully performed their jobs while using a seat (*see* Dkt. 66-3 [Anders], 66-10 [Brunton], 66-14 [Dacay], 66-16 [Dadato], 66-25 [Merrit], 66-27 [Montes], and 66-30 [Workman], all at ¶ 6), and all 30 declarants testified they would have benefited from using a seat while operating the register (*see* Dkt. 66-1 through 66-30, all at ¶ 6).  Finally, with regard to typicality and adequacy (Rule 23(a)(3) and (4)), Plaintiff Nykeya Kilby was employed as a Clerk/Cashier during the proposed class period, performed the same cashiering functions as other class members, and was not provided with a seat.  *See* Dkt. 68 [Kilby Dec.].  Additionally, her counsel are experienced class action attorneys and qualified to prosecute the action on behalf of the class.  *See* Dkt. 63-2 [Clapp Dec.]; 63-4 [McInerney Dec.]; 63-5 [Righetti Dec.].  Plaintiff has made her prima facie showing.

CVS opposed class certification arguing, *inter alia*, that differences in its cash register configurations precluded findings of commonality and predominance. *See* Dkt. 77, pages 7-10. This interrogatory specifically quotes from Defendant's class certification opposition in an effort to determine exactly what claimed differences exist and whether those differences are material. Under Federal Rule of Civil Procedure 11(b)(3), CVS could not have represented to the District Court that "[t]here are many types of cashier stands and configurations at CVS" without evidentiary support.  The interrogatory requests that evidentiary support.

Contrary to CVS' objection, the interrogatory is not overbroad as to time.  The statute of limitations on a PAGA claim runs from the date the plaintiff serves the pre-litigation notice on the California Labor Workforce Development Agency (LWDA).  *Rimarez v. Ghilotti Bros, Inc.*, 941 F.Supp.2d 1197, 1209 (N.D. Cal. 2013).  Plaintiff served her notice on June 9, 2009.  Thus, the

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

1    statute of limitations extends back to June 9, 2008.

2         Nor is the interrogatory "duplicative" of previous discovery requests.  Plaintiff's Request

3    for Production Nos. 13 and 34, which were served in 2011, requested diagrams showing cash

4    register configurations that existed as of that date.  In response, CVS produced diagrams and

5    photos of approximately 20 out of 850 stores. Those 20 were introduced through a CVS declarant,

6    Mitch Ferguson.  They were from 20 different locations but did not purport to be a random

7    sample. (McInerney Dec. ¶ 18.)  This interrogatory asks CVS to describe the cash register

8    configurations in all of its California stores, including those for which diagrams do not exist and

9    those that have been opened or remodeled since 2011.

10        Finally, the interrogatory is not unduly burdensome or harassing.  As this Court ruled in

11   *Hernandez*, 2014 U.S. Dist. LEXIS 147630 at *9, the objecting party has the burden of proving

12   that a discovery request is unduly burdensome.  CVS has offered no evidence or explanation of

13   what would be required to compile the requested information—only that it cannot be done.  Of

14   course, CVS has an interest in resisting this discovery because it goes directly to the class

15   certification issue.

16        During the meet and confer process, Mr. McInerney pointed out that as an alternative to

17   describing the configurations of each of its stores, CVS could respond by saying, for example,

18   "20% have Type A counters, 35% have Type B counters…." CVS said this was impossible.

19   Mr. McInerney then proposed that CVS provide all of the counter layout plans or diagrams for all

20   of its California stores, as requested by Document Requests Nos. 41, 42 and 51. Mr. Weil

21   responded that CVS does not have plans or diagrams for every store, but he would try to produce

22   some plans that do exist.  When that might occur was not stated.

23        Plaintiff's counsel then suggested that CVS email each of its store managers directing them

24   to complete a short questionnaire about the number and type of checkouts in their store. The

25   managers could assure accuracy by snapping a few photos. This would take each manager perhaps

26   ten minutes. Plaintiff's attorneys, with or without defense participation, would catalogue the

27   results. In this way, the experts and the District Court could have accurate and specific evidence of

28

OHSUSA:766173792.3

1  at least the current setup of each store. If remodels have been done, CVS or its managers

2  presumably would have records of any dates of the relevant changes. Given the ease and cost-

3  effectiveness of communicating by email, Plaintiff's proposal would not be unduly burdensome on

4  defendant, and in any event, any such burden is outweighed by the importance of the information

5  on the issue of class certification.   In the final meet and confer on December 2, Mr. Weil said that

6  CVS rejected this approach. (McInerney Dec. ¶ 18.)

7     The bottom line is that CVS has argued, and will continue to argue, that differences in its

8  cash register configurations preclude certification.  So far, CVS has cherry-picked the stores with

9  the largest differences while resisting discovery of information that tends to show the underlying

10  similarity of the stores.  Either CVS must explain in detail what the cash register configurations

11  are, or should be barred from presenting evidence of the configurations in opposition to the

12  renewed motion for class certification.  *See Fresno Rock Taco, LLC v. Nat'l Sur. Crop.*, 2013 U.S.

13  Dist. LEXIS 101428, *13-14 (E.D. Cal. July 18, 2013) (if a litigant withholds evidence in

14  response to a discovery request, that evidence is subject to exclusion at trial under Fed. R. Civ. P

15  26(b)).

16     **Defendant's Position Regarding Interrogatory No. 17:**

17     Responding to this discovery request, on its face, is unduly burdensome and not

18  proportional to the needs of the case.  Nor can Plaintiff demonstrate that the discovery she seeks is

19  likely to substantiate any of her class allegations or that the she can demonstrate a *prima facie* case

20  of class certification.  Indeed, Judge Anello already denied Plaintiff's first motion citing the fact

21  that CVS presented "credible" evidence that the cash stands and layouts vary widely.  Dkt. 131,

22  page 9.  This confirms that class certification is unlikely.  *Tseng*, 2014 U.S. Dist. LEXIS 5893, at

23  *17-18.

24     CVS currently operates approximately 870 retail pharmacy stores in California.

25  Declaration of Daniel DiTommaso, Dec. 12, 2016 ("DiTommaso Dec."), ¶ 5.  From June 9, 2008,

26  to the present, CVS has operated at least 870 stores in California (approximately 940 if one

27  includes stores that have closed).  *Id*.; Declaration of Chris Brown, December 12, 2016 ("Brown

28

OHSUSA:766173792.3

1   Dec.") ¶ 6.  CVS stores vary in size, layout, and configuration.  Dkt. 77-5 (Dec. of Keith Seavey),

2   ¶¶ 3, 10.  The variation in CVS store size and configuration is due, in part, to the growth of CVS

3   within California.  In 2006, CVS expanded its presence in California by acquiring hundreds of

4   Sav-On Drug Stores throughout the state.  Dkt. 77-2 (Dec. of Hank Casillas), ¶ 3.  CVS again

5   expanded in 2008 by acquiring more than 500 Longs Drug Stores, primarily in California.  *Id.* ¶ 4.

6   The layout and configuration of CVS stores that were previously Sav-On or Longs stores are

7   different than those of stores that were always a CVS store.  *Id.* ¶ 6.  There are, moreover,

8   differences between and among the former Sav-On and Longs Drugs Stores.  *Id.*

9        Plaintiff contends there are only three types of cash register configurations in CVS's

10  California stores, but Plaintiff is mistaken.[3]  There are many types of cashier stands and

11  configurations at CVS.  These differences are laid out in detail in CVS's Opposition to Plaintiff's

12  first Motion to For Class Certification (Dkt. 77), at pages 8-10.   While sometimes CVS store

13  design employees generically refer to certain types of registers as "urban pass through," "next

14  generation pass through," "Killion belt," "counter," "horseshoe," left and right versions of the

15  foregoing and even more, there is an unknown number of variations and of check out types among

16  CVS's register stands as well as design modifications, and CVS does not maintain records of

17  which of its 940 stores it has operated since June 2008 have or had what kind of register stands.

18  *See* Dkt. 77 (Def.'s Class Cert. Opp'n), at pages 8-9; DiTommaso Dec. ¶¶ 5-8.  Importantly, when

19  denying class certification, Judge Anello recognized the varied register stands that exist in CVS's

---

21  [3] Plaintiff's cited evidence to support her contention that there are only three different register
    configurations is misleading.  First, Ken Mahoney was not the FRCP 30(b)(6) designee on this
22  topic. Dtk. 80, ¶ 9 Mahoney is a Regional Manager and only familiar with what he has seen in his
    region. Dkt. 80-2, page 15:7-10. Plaintiff cancelled the deposition of a CVS witness about the
23  varying configurations in CVS's stores, and never realistically tried to take the deposition prior to
    filing Plaintiff's motion.   *See* Dkt. 80, ¶¶ 9–13.  Plaintiff's assertion is further belied by the
24  diagrams and photographs of a sampling of 20 CVS stores produced as CVS001619–1709.  *See*
    Weil Dec., Ex. A (Ferguson Dec.), ¶¶ 2–8, Ex. 1.  In addition, the declarations submitted by CVS
25  describe varying cash register configurations throughout CVS's California stores.  *See generally*
    Dkt. 87 (CVS's Compendium of Declarations In Support Of CVS's Opposition to Plaintiff's
26  Motion for Class Certification ("CVS Dec.")).

28

1  stores.  Dkt. 131, page 9 ("there are different check-out station styles at various stores and

2  different configurations within those check-out stations").

3      Accordingly, in order to accurately answer Plaintiff's interrogatory, CVS would need to

4  send someone into each of its 870 California stores to investigate (and travel back in time to visit

5  the stores now closed, which is obviously impossible).  This entire process would take months of

6  effort.  DiTommaso Dec. ¶¶ 5-9; Brown Dec. ¶ 11.  This is the antithesis of the purpose of a class

7  action, which is supposed to be tried on representative facts, and underscores why this case is

8  unmanageable.

9      Moreover, Plaintiff's Interrogatories 17-20 are akin to "all documents" or "all facts"

10  contention interrogatories, *i.e.,* CVS contends that there are virtually limitless variations in its cash

11  stands, and Plaintiff wants CVS to describe them all.  These sorts of interrogatories are disfavored,

12  particularly in this jurisdiction.  *Romero v. Macy's, Inc.*, 2016 U.S. Dist. LEXIS 123439, at *8-9

13  (S.D. Cal. Sept. 12, 2016) ("Courts will generally find contention interrogatories overly broad and

14  unduly burdensome on their face to the extent they ask for "every fact or "all facts" which support

15  identified allegations or defenses") (internal citations and quotations omitted).

16      Notwithstanding, CVS has already provided Plaintiff with sample information and offered

17  to do more.  For example, before Plaintiff's prior class certification motion, CVS already provided

18  Plaintiff with a sampling of the different cash register stands that exist in 20 stores throughout the

19  state (*e.g.,* Santa Clara, Chico, Rancho Cordova, Red Bluff, Solana Beach, Walnut Creek, Rohnert

20  Park) by photographing and measuring the cash wraps in the stores.  *See* Weil Dec., Ex. A

21  (Ferguson Dec.), ¶ 4, Ex. 1.  The sampling underscores the varied nature and measurements of

22  CVS's cash wraps.  In order to resolve the current discovery dispute regarding Interrogatories Nos.

23  17- 20, CVS offered to sample additional stores and provide similar information.  Weil Dec. ¶ 6.

24  Plaintiff rejected this offer.  *Id.*  CVS also agreed to hunt down and produce store layouts for as

25  many California stores as CVS could find, which CVS was doing in any event, that offers a bird's

26  eye view of the layout of the stores.  *Id.* ¶ 7.  At the date of this filing, CVS has produced 132 store

27  layouts.  *Id.*  Attached as Exhibit C to the Weil Declaration is an example of a few.

28

OHSUSA:766173792.3

1    Yet, Plaintiff still is not satisfied.  Instead, Plaintiff suggests that CVS circulate a survey to

2   all of its 870 store managers asking them to photograph the cash stations, take measurements of

3   them all, and describe the cash stations, to satisfy this request and the requests below.   Of course,

4   CVS does not provide all of its 870 store management teams with cameras and tape measures, so

5   Plaintiff presumably wants CVS to purchase 870 cameras and tape measures.  DiTomasso Dec., ¶

6   9; Brown Dec., ¶ 11.  Plaintiff also did not actually provide CVS or this Court with a draft

7   questionnaire or explain how store managers would effectively describe the cash register stations

8   with any standard or accuracy.  CVS does not train its store managers on cash register designs, so

9   Plaintiff's suggestion would require 870 managers to individually make up some terminology

10  without any standards.  DiTomasso Dec., ¶¶ 8-9.  There is also no guarantee that the managers

11  would all measure the same things or that the Court or parties could rely on their measurements.

12  *Id*.  Nor is it appropriate to burden CVS's 870 store managers with this task.  DiTommaso Dec., ¶¶

13  8-9.

14    In the end, it is clear that what really annoys Plaintiff is not that CVS is refusing to endure

15  Plaintiff's burdensome requests.  It is that the answers themselves are not helpful to Plaintiff's

16  case and do not substantiate her class allegations.  That is, answering Interrogatories 17-20

17  requires CVS to conduct a store-by-store analysis, which is the antithesis of a manageable class

18  action and unduly burdensome.  The Court should deny Plaintiff's motion.

19    For all of these reasons, Plaintiff's motion should be denied as to Interrogatory No. 17.

20  **Interrogatory No. 18:**

21    On page 4 of the Opposition,[4] defendant states: "Not only do the types of register stands

22  vary, but the amount of workspace behind or around the registers varies."  For each CVS store that

23  has been open in California at any time between June 9, 2008 and the present, DESCRIBE the

24  amount of workspace behind and around the registers.  (DESCRIBE means state the store number

25  and location and then state the physical dimensions in inches of the workspace behind and around

26  _____

27  [4]    Dkt. 77, page 9, lines 3-4.

28  

15

OHSUSA:766173792.3

the registers and why (if true) those physical dimensions preclude the use of a seat or stool.)

**Response to Interrogatory No. 18:**

Defendant objects to this Interrogatory as vague and ambiguous, including but limited to the terms or phrases "DESCRIBE," "state," "workspace behind and around," and "preclude the use of a seat or stool." Defendant objects to this Interrogatory as overbroad because the relevant time period begins on September 18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this Interrogatory to the extent Plaintiff misconstrues Defendant's obligation to provide seats under section 14 of Wage Order 7 to depend on whether the workspace behind or around a register permits the installation of a seat rather than a consideration of all relevant circumstances. Defendant objects to this Interrogatory as unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Interrogatory because it is duplicative and cumulative of Plaintiff's prior discovery requests, including Request for Production Nos. 12 and 13 (see. e.g., CVS001621-CVS001627). Defendant objects to this Interrogatory because it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the foregoing specific and general objections, Defendant responds as follows: Defendant will provide a substantive response after Plaintiff significantly narrows the scope of this Interrogatory following an appropriate meet and confer.

**Plaintiff's Position Regarding Interrogatory No. 18:**

Like the preceding interrogatory, this interrogatory quotes CVS' own words in opposition to class certification. Plaintiff's attempts to compromise, such as identifying a number of stores as a representative sample, were rejected by CVS.  Plaintiff's counsel also suggested the manager email approach (described earlier re: No. 17), but that suggestion was also rejected.  Plaintiff finds it difficult to believe that all 850 stores in a chain store operation are unique, yet at the same time, according to CVS, all have physical characteristics that preclude the use of a seat.  Plaintiff is

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

1  willing to accept a compromise solution, but CVS should not be allowed to make generalized

2  statements to the District Court about how stores "vary" without providing complete responses in

3  discovery.

4      **Defendant's Position Regarding Interrogatory No. 18:**

5      The Court does not need to infer any burdensomeness in responding to this interrogatory.

6  Plaintiff bluntly asks CVS to visit all 870 stores and "state the physical dimensions in inches of the

7  workspace behind and around the registers."  This request in itself underscores that Plaintiff

8  cannot satisfy the commonality requirement of her case; to the contrary, the request confirms that

9  this case cannot be tried on representative testimony.  As explained above, CVS already provided

10  plaintiff with a sampling and offered to do more.  Weil Dec. ¶ 6.  Plaintiff refused and her

11  suggestions, as explained above, are unworkable.

12      But that is not all.  Plaintiff also asks CVS to explain – as to **each** of the much more than

13  3,480 cash stands (assuming a ***minimum*** of 4 cash stands per store) – "why (if true) those physical

14  dimensions preclude the use of a seat or stool."  DiTomasso Dec. ¶ 5 (CVS stores each have

15  between 4 and 12 point of sale locations).  Essentially, Plaintiff asks CVS to explain the merits of

16  its defenses as to each and every cash stand in California.  CVS, and its lawyers, would need to

17  visit each of the 870 stores and analyze *more* than 3,480 cash stations to articulate why the

18  dimensions preclude the use of a stool or seat.  Not only is that unduly burdensome, but again

19  highlights for the Court why class certification is inappropriate for this case.

20      Plaintiff's motion should be denied as to Interrogatory No. 18.

21      **Interrogatory No. 19:**

22      On page 4 of the Opposition,[5] defendant states: "Some register stands have unique

23  attributes."  For each CVS store that has been open in California at any time between June 9, 2008

24  and the present, DESCRIBE any unique attributes of the register stands in that store.  (DESCRIBE

25  means state the store number and location and then state the unique attributes of the register stands

26  _____

27  [5]   Dkt. 77, page 9, lines 9-10.

28

OHSUSA:766173792.3

1   in that store and why (if true) those unique attributes preclude the use of a seat or stool.)

2   **Response to Interrogatory No. 19:**

3   Defendant objects to this Interrogatory as vague and ambiguous, including but limited to

4   the terms or phrases "DESCRIBE," "state," "unique attributes," and "preclude the use of a seat or

5   stool." Defendant objects to this Interrogatory as overbroad because the relevant time period

6   begins on September 18, 2008, one year preceding the date that Plaintiff filed her original

7   complaint. Defendant objects to this Interrogatory to the extent Plaintiff misconstrues Defendant's

8   obligation to provide seats under section 14 of Wage Order 7 to depend on whether the unique

9   attributes of register stands permit the use of seating rather than a consideration of all relevant

10  circumstances. Defendant objects to this Interrogatory as unduly burdensome, oppressive, and

11  harassing given that compiling the information requested is unreasonably difficult and expensive

12  and would require a highly-individualized inquiry, which is inappropriate in a class action,

13  particularly at this pre-certification stage officiation. Defendant objects to this Interrogatory

14  because it seeks information protected from disclosure by the attorney-client privilege and/or

15  attorney work product doctrine.

16  Subject to and without waiving the foregoing specific and general objections, Defendant

17  responds as follows: Defendant will provide a substantive response after Plaintiff significantly

18  narrows the scope of this Interrogatory following an appropriate meet and confer.

19  **Plaintiff's Position Regarding Interrogatory No. 19:**

20  Plaintiff notes that CVS used the phrase "unique attributes" in opposition to certification,

21  yet CVS now objects that the phrase is vague and ambiguous.

22  Plaintiff would like CVS to state exactly what "unique attributes" of the register stands—

23  as CVS used the phrase—impact the use of a seat and why or how they do so.  In its response,

24  CVS stated "Defendant will provide a substantive response after Plaintiff significantly narrows the

25  scope of this Interrogatory following an appropriate meet and confer." Plaintiff has suggested that

26  CVS respond with the percentages of stores that have certain types of checkouts or characteristics,

27  proposed that the parties agree on a representative sample of stores, and/or suggested that CVS

28

OHSUSA:766173792.3

1   send the manager email referenced above. CVS has offered no concrete counter-proposal.  Despite

2   efforts to meet and confer, Plaintiff has not been given even hint at what the "substantive

3   response" is that CVS pledged in its response to this interrogatory.

4   **Defendant's Position Regarding Interrogatory No. 19:**

5   This interrogatory again purposely demands that CVS visit each of its 870 stores to

6   identify the variety of unique attributes as to each cash stand.  In opposition to class certification,

7   CVS already identified some examples, which were based on witness testimony and the sampling

8   CVS had provided.  *See* Dkt. 77 (Class Cert. Opp'n), page 9 & fns. 14-16.  For example, the cash

9   boxes at some register stands may be lower, requiring employees to reach even farther to put

10  money away.   Some registers have swinging "cowboy" doors right next to them.  *Id*.  Also, each

11  store may arrange these varied register configurations differently.  One store may have six counter

12  registers in a row, while another may have two separate sets of counter registers broken up by a

13  number of pass-through registers.  *Id*., page 10.  CVS offered to compromise with plaintiff by

14  conducting an additional sampling, but Plaintiff has refused.  Weil Dec. ¶ 6.  Requiring CVS to

15  conduct an investigation of each and every one if its more than 3,480 cash stands is unduly

16  burdensome, not proportional, and defeats the purpose of a class action.

17  **Interrogatory No. 20:**

18  On pages 4-5 of the Opposition,[6] defendant states: "[T]he distance between the check-out

19  stands and the product walls differs from store to store…."  For each CVS store that has been open

20  in California at any time between June 9, 2008 and the present, DESCRIBE the distance between

21  the check-out stands and the product wall.  (DESCRIBE means state the store number and location

22  and then state the distance(s) between the check-out stands and the product wall and why (if true)

23  it precludes the use of a seat or stool.)

24  **Response to Interrogatory No. 20:**

25  Defendant objects to this Interrogatory as vague and ambiguous, including but limited to

26  

27  [6]   Dkt. 77, pages 9-10.

28  

**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC**

OHSUSA:766173792.3

the terms or phrases "DESCRIBE," "distance(s)," and "preclude the use of a seat or stool. "Defendant objects to this Interrogatory as overbroad because the relevant time period begins on September 18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this Interrogatory to the extent Plaintiff misconstrues Defendant's obligation to provide seats under section 14 of Wage Order 7 to depend on whether the distance between a checkout stand and product wall precludes the use of a seat or stool rather than a consideration of all relevant circumstances. Defendant objects to this Interrogatory as unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Interrogatory as duplicative because it seeks information already produced (see, e.g., CVSOO1621, CVSOO1630). Defendant objects to this Interrogatory because it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving the foregoing specific and general objections, Defendant responds as follows: Defendant will provide a substantive response after Plaintiff significantly narrows the scope of this interrogatory following an appropriate meet and confer.

**Plaintiff's Position Regarding Interrogatory No. 20:**

As in preceding interrogatories, CVS pledged a substantive response after narrowing of the request. However, over three weeks, CVS has ignored Plaintiff's suggestions and compromises and has not made any of its own. CVS, despite its attorney's cordiality, continues to give new meaning to the term "bidding against yourself."

**Defendant's Position Regarding Interrogatory No. 20:**

This interrogatory suffers from the same infirmities of the above requests.  CVS already provided a sampling, store plans, and offered to do some additional sampling.  Weil Dec. ¶¶ 6-7, Ex. C.  Plaintiff would not accept.  The Court should deny Plaintiff's motion.

**Interrogatory No. 21:**

For each CVS store that has been open in California at any time between June 9, 2008 and

1   the present, DESCRIBE whether it would be physically possible or impossible to use a seat or

2   stool while operating the front-end cash registers at that store (regardless of whether CVS believes

3   it is desirable or advisable to do so).  (DESCRIBE means state the store number and location of

4   the store, and if CVS contends it would be physically impossible to use a seat or stool while

5   operating the front-end cash registers, explain why in detail.)

6   **Response to Interrogatory No. 21:**

7       Defendant objects to this Interrogatory as vague, ambiguous, and unintelligible, including

8   but limited to the terms or phrases "DESCRIBE," "physically possible or impossible," "to use a

9   seat or stool while operating front-end cash registers," "desirable," and "advisable." Defendant

10  objects to this Interrogatory as overbroad because the relevant time period begins on September

11  18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects

12  to this Interrogatory to the extent Plaintiff misconstrues Defendant's obligation to provide seats

13  under section 14 of Wage Order 7 to depend on whether it would be physically possible or

14  impossible to use a seat or stool while operating a front-end cash register rather than a

15  consideration of all relevant circumstances. Defendant objects to this Interrogatory as unduly

16  burdensome, oppressive, and harassing given that compiling the information requested is

17  unreasonably difficult and expensive and would require a highly-individualized inquiry, which is

18  inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant

19  objects to this Interrogatory because it seeks information protected from disclosure by the

20  attorney-client privilege and/or attorney work product doctrine.

21      Subject to and without waiving the foregoing specific and general objections, Defendant

22  responds as follows: Defendant will provide a substantive response after Plaintiff significantly

23  narrows the scope of this Interrogatory following an appropriate meet and confer.

24  **Plaintiff's Position Regarding Interrogatory No. 21:**

25      This interrogatory asks, if CVS contends it is physically impossible to use a seat in a

26  particular store, CVS should identify the store and the reason(s) why.  To the extent this is a

27  "contention interrogatory," it is perfectly proper, especially at this advanced stage of the litigation.

28

1  *Hernandez v. Best Buy Co.*, 2014 U.S. Dist. LEXIS 152117, *17-19 (S.D. Cal. Oct. 24, 2014).

2  Plaintiff has suggested a sampling procedure whereby CVS would respond to the interrogatory

3  with respect to a representative sample of stores, but CVS rejected that suggestion. CVS has also

4  rejected the overarching solution of CVS emailing its managers and asking them to answer a short

5  questionnaire about their stores, along with providing photos. If CVS believed that every checkout

6  configuration in every one of its stores physically precluded the use of seats, it could have easily

7  responded that way. Instead, CVS promised a substantive response after Plaintiff narrowed the

8  scope of the request. However, suggestions by Plaintiff on narrowing have been a one-way

9  conversation.

10  **Defendant's Position Regarding Interrogatory No. 21:**

11  Plaintiff does not deny that this is a contention-based interrogatory.  It requires CVS to

12  provide its answer on the merits of this case as to every cash register stand in California since

13  2008, *i.e.,* explain why the more than 3,480+ cash register stands in its 870 current stores (plus

14  closed stores) do not reasonably permit the use of a seat.  DiTommaso Decl. ¶ 5; Brown Dec. ¶ 6.

15  Requiring CVS to do this, before Plaintiff can even certify a class, makes no sense.   To

16  compromise, CVS offered to provide an answer to this interrogatory for the cash stands in the

17  store Plaintiff worked in.  Plaintiff refused.  Requiring CVS and its lawyers to visit 870 stores and

18  describe their defenses for over 3,480 cash stands is unreasonable and burdensome.  The Court

19  should deny Plaintiff's motion.

20  **Interrogatory No. 22:**

21  IDENTIFY each CVS store in California that has, at any time between June 9, 2008 and

22  the present, undergone a remodel of the front-end cashier stands or counters.  (IDENTIFY means

23  state the store number and location of the store, the date of the remodel, describe the remodel (e.g.,

24  "bench configuration was replaced by pass-through configuration," "front counters and registers

25  replaced," etc.), and state how much was spent on the remodel.)

26  **Response to Interrogatory No. 22:**

27  Defendant objects to this Interrogatory as vague and ambiguous, including but limited to

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

the terms or phrases "remodel," "describe," and "how much was spent." Defendant objects to this Interrogatory as overbroad because the relevant time period begins on September 18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this Interrogatory because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Interrogatory as unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Interrogatory because it seeks proprietary and confidential information and/or trade secrets.

Subject to and without waiving the foregoing specific and general objections, Defendant responds as follows: Defendant will provide a substantive response after Plaintiff significantly narrows the scope of this Interrogatory following an appropriate meet and confer.

### Plaintiff's Position Regarding Interrogatory No. 22:

The California Supreme Court has stated that an employer may not design a workstation that precludes the use of a seat: "[A]n employer may not unreasonably design a workspace to further a preference for standing or to deny a seat that might otherwise be reasonably suited for the contemplated tasks." *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1, 22 (2016).  Therefore, if CVS has been remodeling its checkout stations, and has done so without using designs that allow seating, that alone establishes a violation. Beyond that, other defendants have asserted that the cost of reconfiguring existing workstations to accommodate seats may be so great that to do so would not *reasonably* permit the use of a seat. Accordingly, this interrogatory asks for the costs actually incurred by CVS when it did workstation remodels. Certainly, CVS has records of its remodels and can identify the stores involved and the amounts it spent.  In our final meet and confer, on December 2, Mr. Weil offered that he is trying to find what documents may exist regarding remodels.

### Defendant's Position Regarding Interrogatory No. 22:

OHSUSA:766173792.3

1    CVS has made certain modifications of various stores in California over the years, as one

2    might expect.  CVS has done some sort of modification on at least 132 stores.  CVS produced to

3    Plaintiff store plans that list the modifications done.  *See, e.g.,* Weil Dec., Ex. C.  The revised floor

4    plan for Store 9528, for example, includes the following changes under the section titled Special

5    Merchandising Notes, "Relocated/reduced checkout to 12" ADA bagwell" and "Added (3) pass

6    thru units as shown."  *Id*., Ex. C.

7    Requiring CVS to describe in an interrogatory the exact modifications for at least 132

8    stores is overbroad and burdensome and would require CVS to conduct physical site visits of all of

9    these stores.  Indeed, this interrogatory is potentially even *more* burdensome than her other similar

10   requests requiring store visits because certain descriptions of the modifications require a reference

11   to former designs that may no longer be available if entire units were replaced. At best, this

12   interrogatory is unduly burdensome while offering limited probative value.  The Court should

13   deny the motion.

14   **Interrogatory No. 23:**

15   IDENTIFY each Clerk/Cashier who was employed in California at any time between

16   June 9, 2008 and the present and who operated a front-end cash register for at least one pay period

17   during that time.   (IDENTIFY means state the name, last-known address, last-known phone

18   number, and last-known email address of that Clerk/Cashier, the store number(s) and location(s)

19   where he/she worked, the total number of pay periods he/she was employed as a Clerk/Cashier in

20   California between June 9, 2008 and the present, and the date his/her employment at CVS ended

21   (if applicable).)

22   **Response to Interrogatory No. 23:**

23   Defendant objects to this Interrogatory as vague and ambiguous, including but limited to

24   the terms or phrases "employed," "operated," and "front-end cash register." Defendant objects to

25   this Interrogatory as overbroad because the relevant time period begins on September 18, 2008,

26   one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this

27   Interrogatory because it seeks information that is neither relevant nor reasonably calculated to lead

28

1  to the discovery of admissible evidence. Defendant objects to this Interrogatory as unduly

2  burdensome, oppressive, and harassing given that compiling the information requested is

3  unreasonably difficult and expensive and would require a highly-individualized inquiry, which is

4  inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant

5  objects to this Interrogatory because it is duplicative and cumulative of Plaintiff's prior discovery

6  requests, including Interrogatory No. 8. Defendant objects to this Interrogatory because it seeks

7  third-party information that is protected from disclosure by the right to privacy guaranteed by the

8  United States and/or California Constitutions.

9      Subject to and without waiving the foregoing specific and general objections, Defendant

10  responds as follows: Defendant will provide a substantive response after Plaintiff significantly

11  narrows the scope of this Interrogatory following an appropriate meet and confer.

12      **Plaintiff's Position Regarding Interrogatory No. 23:**

13      During our first meet and confer, Defendant suggested it could simply update addresses it

14  had provided for the same class members it provided in 2011.  On December 2, Mr. Weil said that

15  any disclosure would be conditioned on our agreement to depose Ms. Kilby again.  (McInerney

16  Dec. ¶ 18.)

17      As this Court held in *Hernandez*, 2014 U.S. Dist. LEXIS 147630, *24, in a class action

18  case, "disclosure of basic contact information for putative class members is 'common practice'

19  and does not constitute a serious invasion of privacy, particularly when the Court determines they

20  may possess relevant discoverable information about class certification issues and the other

21  allegations in plaintiff's Complaint."  *Id. citing Artis v. Deere & Co.,* 276 F.R.D. 348, 353 (N.D.

22  Cal. 2011).  Plaintiff's need for the contact information is particularly acute in this case, since

23  CVS claims the differences in store configurations preclude class certification, but CVS has been

24  unwilling to provide complete information about what those differences are.

25      Before the stay was lifted, and again early in meet and confer process, Plaintiff offered to

26  accept the contact information pursuant to an opt-out procedure.  However, with the discovery cut-

27  off and class certification deadlines coming up quickly (February 27 and April 27, 2017,

28

OHSUSA:766173792.3

1   respectively), the parties do not have time to agree on a notice, hire a claims administrator, and

2   engage in a 30-45 day opt-out procedure.  As this Court recognized in *Hernandez*, an opt-out

3   procedure unnecessarily hampers discovery by erecting obstacles that exceed the protections

4   necessary to guard the privacy rights of employees.  *Id. at *24 citing Puerto v. Superior Court*,

5   158 Cal.App.4th 1242, 1245 (Cal. App. 2008).   Here, as in *Hernandez*, there is a protective order

6   in place that will protect the limited privacy rights at stake.  *See* Dkt. 62.

7   　　　Because CVS has already produced the names and contact information for a subset of class

8   members who were employed in California in response to Interrogatory No. 8, Plaintiff is willing

9   to limit her request to Clerk/Cashers who first became employed by CVS in California at any time

10   after April 20, 2011 (the date of CVS' prior disclosure).

11   　　　**<u>Defendant's Position Regarding Interrogatory No. 23:</u>**

12   　　　As an initial matter, fully complying with this interrogatory is extremely burdensome.

13   Defendant does not retain records that would readily permit Plaintiff to identify every

14   Clerk/Cashier who actually operated a register, as there are clerk/cashiers who have never

15   operated a register during their employment with CVS.  *See* Brown Dec. ¶ 10; Dkt. 77 (Class Cert.

16   Opp'n), page 19.  Accordingly, compliance with Plaintiff's Interrogatory would require Defendant

17   to individually inquire as to whether each clerk/cashier had ever operated a register.  Based on a

18   preliminary review of its records, Defendant CVS has employed at least 35,374 clerk/cashiers in

19   its California retail stores since September 2008.  Brown Dec. ¶ 6.  Many of these employees have

20   left the company, making the process of identification even more difficult.  *Id*.

21   　　　Notwithstanding, CVS already provided plaintiff with the names and contact information

22   of almost 3,500 putative class members, which at the time represented about 20% of the putative

23   class.   Weil Dec. ¶ 3.   And Plaintiff used that list when she prepared and submitted *30*

24   *declarations* in support of her first motion for class certification.   Rather than send another

25   disruptive mailing to thousands more putative class members seeking their permission to provide

26   plaintiff with their contact information, which CVS is required to do (*Belaire-West Landscape,*

27   *Inc. v. Superior Court*, 149 Cal. App. 4th 554, 561 (2007)), CVS offered to update the contact

28   

OHSUSA:766173792.3

1   information and dates of employment for the almost 3,500 putative class members who already

2   gave their consent to be contacted.  CVS then committed that, if it turns out that a huge percent of

3   the almost 3,500 employees are former employees, then CVS would be amenable to doing another

4   mailing to a certain percent of putative class members so that Plaintiff would have more current

5   information.  Plaintiff still refused.  Weil Dec. ¶ 3.

6        Plaintiff has never explained why the almost 3,500 names and contact information Plaintiff

7   already has is insufficient or why, if CVS updates the information about those putative class

8   members, that would be insufficient.  Indeed, courts in this district have held that the amount of

9   putative class member contact information already in Plaintiff's possession is sufficient and does

10  not justify another production.  *See Maes*, 2013 U.S. Dist. LEXIS 29949, at *6-7 (denying

11  plaintiff's request for additional contact information where plaintiff already had contact

12  information for 10% of the putative class).

13       Plaintiff claims that she wants more current information *i.e.,* contact for putative class

14  members who have joined CVS after April 20, 2011.  But, if many of the almost 3,500 were

15  employed with CVS after April 20, 2011, or still are employed with CVS, those employees could

16  provide Plaintiff with that same current information she seeks.  Again, Plaintiff never explained

17  why CVS's proposal is insufficient, and Plaintiff's request for more contact information makes no

18  sense in light of the substantial amount of contact information she already has.

19       If the Court does require CVS to provide some additional information (the Court should

20  not do so), then it should be for, at most, another 10% of the putative class.  In 2011, there were

21  about 17,000 putative class members.  Today, there are 35,374.  Brown Dec. ¶ 6.  Courts,

22  including in this district, recognize that 10% is more than enough.  *See Maes*, 2013 U.S. Dist.

23  LEXIS 29949 at *6; *see also Murphy v. Target Corp.*, 2011 U.S. Dist. LEXIS 62458, *2-3 (S.D.

24  Cal. June 14, 2011).

25       Also, should the Court order another mailing, it should require another opt-out mailing to

26  protect privacy.  Indeed, when Plaintiff previously received contact information, Plaintiff agreed

27  to an opt-out procedures.  According to the Parties' Joint Motion Re: Opt-Out Privacy Notice to

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

Putative Class Members "[t]he parties agree that the above-outlined procedure strikes the appropriate balance between Plaintiff's right to obtain the names and contact information of the putative class members, and CVS's obligation to maintain its employees' information as confidential, as well as reducing the cost of compiling the information." Dkt. 34, page 3.  The Southern District has held precisely the same in denying Plaintiff's counsel's request to forego a *Belaire* notice procedure in a prior seating case.  *Murphy*, 2011 U.S. Dist. LEXIS 62458, at *12 (denying the plaintiff's request for contact information without a *Belaire* notice and holding that "an opt-out notice 'most adequately strikes a fair balance between protecting the privacy of putative class members' information with the need of class counsel to receive the contact information necessary for any upcoming class certification efforts'") (*citing Stone v. Advance America, et al*., 2009 U.S. Dist. LEXIS 112968 (S.D. Cal. 2009).  Notably, in *Target*, Plaintiff's counsel had requested contact information for a much smaller subset of the putative class (as opposed to Plaintiff's request here for all employees), and yet the request was still denied.  *Id.* at *5-6.  Other courts facing this same issue have also chosen to balance the interests of the parties by compelling production of contact information for only a subset or representative sample of the putative class – not the entire putative class as Plaintiff currently seeks.  *See, e.g., Currie-White v. Blockbuster, Inc.* 2010 U.S. Dist. LEXIS 47071, *10-11 (N.D. Cal. April 15, 2010).

For all of these reasons, this Court should deny Plaintiff's motion as to this Interrogatory.

**Interrogatory No. 24:**

IDENTIFY each store management employee (including without limitation Store Manager, Store Manager in Training, Operations Manager, or Shift Supervisor) who was employed in California at any time between June 9, 2008 and the present and who is no longer employed by CVS.  (IDENTIFY means state the name, last-known address, last-known phone number, and last-known email address of that person, his/her title, the store number(s) and location(s) where he/she worked, and the date his/her employment at CVS ended.)

**Response to Interrogatory No. 24:**

Defendant objects to this Interrogatory as vague and ambiguous, including but limited to

the terms or phrases "store management employee" and "employed." Defendant objects to this Interrogatory as overbroad because the relevant time period begins on September 18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this Interrogatory because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Interrogatory as overbroad, unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Interrogatory because it seeks third-party information that is protected from disclosure by the right to privacy guaranteed by the United States and/or California Constitutions.

**Plaintiff's Position Regarding Interrogatory No. 24:**

Plaintiff seeks the names and contact information of *former* store management employees (store managers, store managers in training, operations managers and shift supervisors) in California. These individuals will have discoverable information about relevant issues, including whether Clerk/Cashiers ever used seats and whether an employee could operate the cash register while seated. In *Cedano v. Thrifty Payless, Inc.*, 2011 U.S. Dist. LEXIS 155956 (D. Or. May 9, 2011), a wage and hour class action brought on behalf of Assistant Store Managers, the court ordered defendant to produce to plaintiff's counsel the names and contract information of Store Managers and District Managers because they were likely to have discoverable information about class certification issues. *Id.* at *23-24, 40-42. Furthermore, in *Melgar v. CSK Auto, Inc.*, 2014 U.S. Dist. LEXIS 53217, *2 (N.D. Cal. April 16, 2014), the court held that California Rule of Professional Conduct 2-100 does not prevent plaintiff's counsel from communicating with defendant's former managers.

Plaintiff knows from her investigation that some Clerk/Cashiers were allowed to sit while checking out customers. *See* Dkt. 66-3 [Anders], 66-10 [Brunton], 66-14 [Dacay], 66-16 [Dadato], 66-25 [Merrit], 66-27 [Montes], and 66-30 [Workman], all at ¶ 6. From Plaintiff's perspective, this is persuasive evidence that the "nature of the work" does permit the use of

OHSUSA:766173792.3

1    seats—if an impaired cashier can use the register and check customers out while seated, then it

2    follows that a cashier without an impairment can also do so.  In *Murphy v. Target Corp.*, 2011

3    U.S. Dist. LEXIS 74813 (S.D. Cal. July 12, 2011), a seating case brought on behalf of Target

4    cashiers, the court found that evidence of whether cashiers ever used seats was "*highly* relevant"

5    and allowed discovery on that issue prior to class certification.  *Id.* at *14 (emphasis original).

6    Granting Plaintiff the names and contact information of former store managers will assist Plaintiff

7    in obtaining this highly relevant evidence.

8            **Defendant's Position Regarding Interrogatory No. 24:**

9            Plaintiff does not dispute that the former managers at issue in this Interrogatory are *not*

10   putative class members.  "A class representative engaging in pre-certification discovery must

11   show good cause that warrants expansion of discovery beyond the class, as defined in the

12   complaint."  *Flores v. Bank of America,* 2012 U.S. Dist. LEXIS 182393, *4 (S.D. Cal. Dec. 27,

13   2012), *citing Martinet v. Spherion Atlantic Enterprises*, 2008 U.S. Dist. LEXIS 48113, 2008 WL

14   2557490 (S.D. Cal. June 23, 2008) (finding the plaintiff's statewide discovery requests to be "over

15   broad and burdensome" pre-certification, and limiting the scope of the discovery to the location

16   where the plaintiff worked).   In addition, it is well established that CVS has an obligation to

17   protect the privacy rights of third party non-litigants.  *Bd. of Trustees v. Superior Court,* 119 Cal.

18   App. 3d 516 (1981).  Absent compelling circumstances, CVS may not breach the privacy rights of

19   these managers.

20           Here, Plaintiff's counsel has provided no compelling circumstance to warrant disclosure.

21   In fact, during the parties' meet and confer efforts on this Interrogatory, Plaintiff's counsel

22   admitted that his true intent in obtaining the names and contact information for former store

23   managers was to find "dirt" that could be used against the Company.  Weil Dec. ¶ 6.  This is

24   exactly the type of overbroad "fishing expedition" that is highly disfavored by the Courts.  *Flores,*

25   2012 U.S. Dist. LEXIS 182393, *4-5.  Plaintiff does not offer any reason why former managers

26   would have more or specialized relevant information regarding the use/potential use of seats in

27   their stores than CVS's current managers or putative class members.  Indeed, there is also no

28

OHSUSA:766173792.3

1   guarantee that any of them has ever operated a register themselves. *See* Dkt. 77 (Def.'s Class

2   Cert. Opp'n), page 19 (noting that many people with the title clerk/cashier have never operated a

3   register).

4       The cases cited by Plaintiff do not compel disclosure of the information sought. In *Cedano*

5   *v. Thrifty Payless, Inc.*, 2011 U.S. Dist. LEXIS 155956 (D. Or. May 9, 2011), the court's decision

6   was based at least in part on the specific facts of the case, which was a misclassification case

7   under Oregon law alleging that Store Managers and District Managers were potentially similarly

8   situated to Assistant Store Managers. No such allegations exist here. Additionally, the *Cedano*

9   decision contains no discussion of former, as opposed to current or all, employees, a distinction

10  here worth noting, as it suggests Plaintiff's true motive is gathering "dirt."[7]  Seeking "dirt" about

11  CVS is not a valid basis for this discovery.

12      Accordingly, given the privacy interests at issue, as well as the admitted improper basis of

13  this request, this court should deny Plaintiff's motion as to Interrogatory No. 24.

14  **Interrogatory No. 25:**

15      IDENTIFY each Clerk/Cashier anywhere in the United States who, at any time between

16  June 9, 2008 and the present, used a seat or stool while operating the cash register. (IDENTIFY

17  means state the name, last-known address, last-known phone number, and last-known email

18  address of that Clerk/Cashier, the store number(s) and location(s) where he/she operated the cash

19  register while using a seat or stool, and the amount of time he/she did so.)

20  **Response to Interrogatory No. 25:**

21      Defendant objects to this Interrogatory as vague and ambiguous, including but limited 10

22  the terms or phrases "seat or stool," "operated the cash register while using a seat or stool,"

23  "amount of time." Defendant objects to this Interrogatory as overbroad in geographical scope and

24  because the relevant time period begins on September 18, 2008, one year preceding the date that

25

26  [7] In *Melgar v. CSK Auto, Inc.*, 2014 U.S. Dist. LEXIS 53217, *2 (N.D. Cal. April 16, 2014), the court only allowed for disclosure of former managers' contact information pursuant to *Belaire*

27  procedure, which, as discussed above, Plaintiff has not agreed to during remanded proceedings.

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

1    Plaintiff filed her original complaint. Defendant objects to this Interrogatory because it seeks

2    information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

3    evidence. Defendant objects to this Interrogatory as unduly burdensome, oppressive, and harassing

4    given that compiling the information requested is unreasonably difficult and expensive and would

5    require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this

6    pre-certification stage of litigation. Defendant objects to this Interrogatory because it seeks third-

7    party information that is protected from disclosure by the right to privacy guaranteed by the

8    United States and/or California Constitutions.

9    **Plaintiff's Position Regarding Interrogatory No. 25:**

10    This interrogatory asks for the names and contact information of any Clerk/Cashier who

11    used a seat or stool while operating the register anywhere in the United States.  Plaintiff has not

12    limited the request to California, since the job of running a cash register is the same in other states

13    as it is in California, and the fact that a Clerk/Cashier in another state is able to perform the job

14    while seated tends to prove that Clerk/Cashiers within California can do so as well.  If, as

15    Plaintiff's counsel believes, CVS has allowed several hundred Clerk/Cashiers to use seats during

16    the class period, this is common evidence on the ultimate issue of whether "the nature of the work

17    reasonably permits the use of seats." Wage Order 7-2001, section 14(A).  As discussed above, in

18    *Target*, 2011 U.S. Dist. LEXIS 74813, the court found that use of seats by cashiers was "*highly*

19    relevant" and ordered production of the names and contact information of those cashiers to

20    plaintiff's counsel. *Id.* at *14 (emphasis original).  The court further found that the cashiers who

21    used seats did not have a reasonable expectation of privacy in that information, and production of

22    their contact information to plaintiff's counsel was not a serious invasion of privacy.  *Id.* at *13.

23    Plaintiff's counsel understands from interviews with Clerk/Cashiers in 2011 that they

24    were allowed to use seats if they provided medical evidence such a doctor's note. *See, e.g.,* Dkt.

25    66-10 [Brunton]; 66-27 [Montes], both at ¶ 6. Typically, large employers create an

26    accommodation file and require standardized forms to be completed and placed in that file.  In the

27    unlikely event that CVS does not maintain such documentation, CVS could simply send out an

28

1  email to its store managers and ask them to identify Clerk/Cashiers who used seats.  This would

2  not be unduly burdensome given the ease of communicating by email and the "*highly* relevant"

3  nature of the information sought.  *Target* at *14.

4  **Defendant's Position Regarding Interrogatory No. 25:**

5  This request is even broader than the others.  Plaintiff wants information about **every CVS**

6  **store in the United States**.  CVS has **9,600** stores in the United States.  Brown Dec. ¶ 9.

7  Plaintiff's class action is only about California's stores.  Whether CVS employees were provided

8  seats in any other state, is irrelevant to this class action, and requiring CVS to provide the details

9  Plaintiff seeks is harassing.   Moreover, where the evidence is clear that CVS's California stores

10  widely vary in layout, it is irrelevant to this class action that a handful of employees in stores other

11  than the Plaintiff's might have been accommodated, due to their disabilities, with a seat or stool.

12  Plaintiff certainly cannot demonstrate how this information would substantiate any class

13  allegation.

14  In any event, according to Plaintiff, she already has direct information from speaking to

15  putative class members that they were supposedly provided with seats.  Why does she need more

16  or need the name of every single employee who was?  Such information necessarily would

17  implicate privacy because, to the extent CVS provided seats, it was to accommodate disabilities of

18  these employees.  There is no dispute that information about CVS employee's medical disabilities

19  is highly confidential.

20  Notwithstanding, CVS has provided a supplemental production to this Interrogatory on

21  December 12, 2016, which includes a general description of instances where a California retail

22  employee requested the use of a seat for a disability accommodation.  This is more than enough

23  information to satisfy this request.

24  **IV.   DISCOVERY DISPUTE REGARDING PLAINTIFF'S FOURTH SET OF**

25  **DOCUMENT REQUESTS, NOS. 41-46, 49, 51-52**

26  **Request for Production No. 41:**

27  On page 4 of the Opposition, defendant states: "Not only do the types of register stands

28

33

OHSUSA:766173792.3

1  vary, but the amount of workspace behind or around the registers varies."   Please produce

2  documents sufficient to show the amount of workspace behind or around the registers at each CVS

3  store in California between June 9, 2008 and the present, including without limitation all floor

4  plans, schematics, design documents, and drawings containing that information.

5  **Response to Request for Production No. 41:**

6  Defendant objects to this Request as vague and ambiguous, including but limited to the

7  terms or phrases "sufficient," "amount of workspace," "behind and around the registers," and

8  "schematics, design documents, and drawings." Defendant objects to this Request as overbroad

9  because the relevant time period begins on September 18, 2008, one year preceding the date that

10 Plaintiff filed her original complaint. Defendant objects to this Request as overbroad, unduly

11 burdensome, oppressive, and harassing given that compiling the information requested is

12 unreasonably difficult and expensive and would require a highly-individualized inquiry, which is

13 inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant

14 objects to this Request because it is duplicative of Plaintiff's prior discovery requests, including

15 Request for Production Nos. 12 and 13 (see. e.g., CVSOO1621-CVSOO1627).

16 Subject to and without waiving the foregoing specific and general objections, Defendant

17 responds as follows: Defendant will produce relevant, responsive, non-privileged documents from

18 the class period, if any exist, after Plaintiff significantly narrows the scope of this Request

19 following an appropriate meet and confer.

20 **Plaintiff's Position Regarding RFP No. 41:**

21 Defendant, again, asserts boilerplate objections.   CVS contends that the amount of

22 workspace behind or around the registers "varies" at each of its stores, but thus far, CVS has

23 produced very few documents showing the amount of space available. To the extent such

24 documents exist, they are highly relevant and discoverable.  CVS has failed to explain why the

25 production of store diagrams would be unduly burdensome.  *See Hernandez*, 2014 U.S. Dist.

26 LEXIS 147630 at *9 [objecting party must prove undue burden].

27 While most businesses retain building plans for purposes of future repair, remodel or sale,

28

34

OHSUSA:766173792.3

1    Mr. Weil has stated that CVS does not have plans for "many" of its California stores.  However, to

2    the extent such plans exist, they must be produced.  To the extent CVS is unable to comply, CVS

3    must state that it has conducted a diligent search and explain why it is unable to comply (*e.g.*, the

4    documents never existed, were lost or stolen, were destroyed, or were never in CVS' possession,

5    custody or control).  *Craftwood Lumber Co. v. Interline Brands, Inc.,* 2013 U.S. Dist. LEXIS

6    1227723, *65 (N.D. Cal. Aug. 29, 2013).

7              **Defendant's Position Regarding RFP No. 41:**

8        As noted above, CVS conducted an investigation to produce a sampling from various

9    stores.  *See* Weil Dec., Ex. A (Ferguson Dec.) (*e.g.*, Santa Clara, Los Angeles, Chico, Rancho

10   Cordova, Red Bluff, Solana Beach, Walnut Creek, Rohnert Park).  CVS has also produced the

11   layouts for 132 stores.  *See* Weil Dec. ¶ 7, Ex. C (sample floor plans).  CVS has agreed to produce

12   any remaining layouts as they are discovered.  Moreover, and as discussed above with regard to

13   Plaintiff's Interrogatories seeking corresponding information (i.e., Interrogatories 17-20), this

14   Request for Production vastly overbroad, unduly burdensome, and not proportional to the needs of

15   the case.  *See, e.g. Hernandez v. Best Buy Co.,* 2014 U.S. Dist. LEXIS 147630 (S.D. Cal., Oct. 15,

16   2014) ("a court may limit discovery of relevant material if it determines that the discovery sought

17   is unreasonably cumulative or duplicative, or obtainable from some other source that is more

18   convenient, less burdensome, or less expensive, or the burden or expense of the proposed

19   discovery outweighs the likely benefit"); *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596 (S.D.

20   Cal. 2014) (denying motion to compel despite agreeing that information sought is relevant, where

21   scope was unreasonable and burdensome).  To the extent that Plaintiff argues that her class

22   certification motion depends on a store-by-store inquiry and analysis, she has – again – fatally

23   undermined her own claim.  *Kilby v. CVS Pharm., Inc.,* 2012 U.S. Dist LEXIS 47855 (S.D. Cal.,

24   April 4, 2012) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2001) for the

25   proposition that, "[d]issimilarities within the proposed class are what have the potential to impede

26   the generation of common answers").

27              **Request for Production No. 42:**

28

OHSUSA:766173792.3

1   On pages 4-5 of the Opposition, defendant states: "[T]he distance between the check-out

2   stands and the product walls differs from store to store …." Please produce documents sufficient

3   to show the distance between the check-out stand and the product wall at each CVS store in

4   California between June 9, 2008 and the present, including without limitation all floor plans,

5   schematics, design documents, and drawings containing that information.

6   **Response to Request for Production No. 42:**

7   Defendant objects to this Request as vague and ambiguous, including but limited to the

8   terms or phrases "sufficient," "show," and "schematics, design documents, and drawings."

9   Defendant objects to this Request as overbroad because the relevant time period begins on

10   September 18, 2008, one year preceding the date that Plaintiff filed her original complaint.

11   Defendant objects to this Request as overbroad, unduly burdensome, oppressive, and harassing

12   given that compiling the information requested is unreasonably difficult and expensive and would

13   require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this

14   pre-certification stage of litigation. Defendant objects to this Request as duplicative because it

15   seeks information already produced (*see. e.g.*, CVSOO1621, CVSOO1630).

16   Subject to and without waiving the foregoing specific and general objections, Defendant

17   responds as follows: Defendant will produce relevant, responsive, non-privileged documents from

18   the class period, if any exist, after Plaintiff significantly narrows the scope of this Request

19   following an appropriate meet and confer.

20   **Plaintiff's Position Regarding RFP No. 42:**

21   Defendant, again, asserts boilerplate objections.  CVS is relying on its assertion that the

22   distance between the check-out stands and the product walls "differs" from store to store.  To the

23   extent CVS intends to rely on that assertion, the documents supporting it are highly relevant.

24   Defendant must produce the documents responsive to Plaintiff's requests to the extent they exist.

25   Defendant has refused any compromise offered during the meet and confer process.

26   **Defendant's Position Regarding RFP No. 42:**

27   *See* Response to No. 41.

28

36

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

**Request for Production No. 43:**

All documents reflecting any request by a Clerk/Cashier anywhere in the United States to use a seat or stool in connection with operation of a cash register or the performance of his or her job at any time between June 9, 2008 and the present.

**Response to Request for Production No. 43:**

Defendant objects to this Request as vague and ambiguous, including but limited to the terms or phrases "request," "seat or stool," "in connection with," "operation of a cash register," and "performance of his or her job." Defendant objects to this Request because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Request as duplicative and cumulative of Plaintiff's prior discovery requests, including Request for Production Nos. 19 and 21. Defendant objects to this Request as overbroad in geographical scope and because the relevant time period begins on September 18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this Request as unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Request because it seeks third-party information that is protected from disclosure by the right to privacy guaranteed by the United States and/or California Constitutions.

Subject to and without waiving the foregoing specific and general objections, Defendant responds as follows: Defendant will produce relevant, responsive, non-privileged documents from the class period, if any exist, after Plaintiff significantly narrows the scope of this Request following an appropriate meet and confer.

**Plaintiff's Position Regarding RFP No. 43:**

This Request seeks documents that were generated when Clerk/Cashiers requested and, in many cases, were provided with a seat to use while cashiering. Often, CVS provided seats to Clerk/Cashiers with temporary conditions such as injury or pregnancy in response to a doctor's

OHSUSA:766173792.3

1   note.  *See, e.g.,* Dkt. 66-10 [Brunton, pregnancy]; 66-27 [Montes, back injury], both at ¶ 6.

2   Almost certainly, CVS has maintained written evidence of such requests.  As the court explained

3   in *Target*, the use of seats by cashiers is highly relevant to the issue of whether the nature of

4   cashiering work reasonably permits the use of a seat.  *Target*, 2011 U.S. Dist. LEXIS 74813, *14.

5   CVS should be ordered to make a diligent search for responsive documents.  To the extent such

6   documents contain sensitive medical information, Plaintiff would be willing to allow CVS to

7   redact that information (*e.g.,* that the seat is needed due to pregnancy or some other type of

8   medical condition), but not the employee name or store location. Plaintiff offered to limit this

9   request to California.

10          **Defendant's Position Regarding RFP No. 43:**

11          "No longer is it good enough to hope that the information sought might lead to the

12   discovery of admissible evidence." *Gilead Scis., Inc. v. Merck & Co*, 2016 U.S. Dist. LEXIS 5616,

13   *4-5 (N.D. Cal. Jan. 13, 2016).  Under the 2015 Amendments to the FRCP, "a party seeking

14   discovery of relevant, non-privileged information must show, before anything else, that the

15   discovery sought is proportional to the needs of the case. The present dispute offers a good

16   example of the wisdom of the Advisory Committee on Civil Rules in elevating proportionality in

17   defining the scope of permissible discovery." *Id.*

18          In this Request, like in Requests for Production 44, 45, and 46 (discussed below), Plaintiff

19   propounded an "**all documents**" request seeking all documents regarding any request by a

20   Clerk/Cashier "**anywhere in the United States**" to use a seat or stool in connection with operation

21   of a cash register **over the course of 8 years**.  Courts routinely disfavor overly broad discovery

22   requests that ask opposing parties to produce everything under the sun, particularly over an 8 year

23   time period.  *See, e.g., Aldapa v. Fowler Packing Co.*, 310 F.R.D. 583, 591 (E.D. Cal. Oct. 29,

24   2015) (explaining that, "in the context of a request for production that asks for every document

25   under the sun […] Plaintiffs' request is unduly burdensome by a wide margin. […] It is Plaintiffs'

26   responsibility to draft narrowly focused requests for production that do not place undue burdens

27   on Defendants to respond").

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

Plaintiff cannot justify this request.  Indeed, Plaintiff has laid no foundation how requests for seats in any other store, other than her own, would have any relevance, and certainly not every one of CVS's 9,600 stores in the United States over an 8 year period.  As explained in the Chris Brown declaration, responding to Plaintiff's requests for "all documents" related to seats requests for California stores, alone, entails searching through thousands upon thousands of emails and documents.  Brown Dec. ¶¶ 5-9.

To satisfy this request, CVS has produced records from its HR database showing requests for accommodation with a seat.  Weil Dec. ¶ 8.  This should be sufficient.  But hunting through "all documents" for any such request, is overly broad and unduly burdensome.  Brown Dec. ¶¶ 5-9.

Notwithstanding, CVS has provided a supplemental production to this Request on December 12, 2016, which includes information from CVS's HR database description describing instances where a California retail employee requested the use of a seat.  Weil Dec. ¶ 8.

**Request for Production No. 44:**

All documents reflecting any consideration of a request by a Clerk/Cashier anywhere in the United States to use a seat or stool in connection with the operation of a cash register or the performance of his or her job at any time between June 9, 2008 and the present.

**Response to Request for Production No. 44:**

Defendant objects to this Request as vague and ambiguous, including but limited to the terms or phrases "consideration," "request," "seat or stool," "in collection with," "operation of a cash register," and "performance of his or her job." Defendant objects to this Request because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Request as duplicative and cumulative of Plaintiff's prior discovery requests, including Request for Production No. 21. Defendant objects to this Request as overbroad in geographical scope and because the relevant time period begins on September 18, 2008, one year preceding the date that Plaintiff filed her original complaint. Defendant objects to this Request as unduly burdensome, oppressive, and harassing given that

OHSUSA:766173792.3

1  compiling the information requested is unreasonably difficult and expensive and would require a

2  highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-

3  certification stage of litigation. Defendant objects to this Request because it seeks third-party

4  information that is protected from disclosure by the right to privacy guaranteed by the United

5  States and/or California Constitutions.

6      Subject to and without waiving the foregoing specific and general objections, Defendant

7  responds as follows: Defendant will produce relevant, responsive, non-privileged documents from

8  the class period, if any exist, after Plaintiff significantly narrows the scope of this Request

9  following an appropriate meet and confer.

10     **Plaintiff's Position Regarding RFP No. 44:**

11     This Request is a follow-on to Request 43 above. It simply seeks documents showing

12 CVS' consideration of request for seats.  The requested documents are highly relevant and

13 discoverable.  Again, to the extent the documents contain sensitive medical information, CVS is

14 free to redact that information.  Plaintiff offered to limit this request to California.

15     **Defendant's Position Regarding RFP No. 44:**

16     *See* discussion regarding Request No. 43, above.

17     **Request for Production No. 45:**

18     All documents reflecting any oral or written communications, including email

19 communications, by or between anyone at CVS concerning the use or potential use of seats or

20 stools by Clerk/Cashiers in connection with the operation of a cash register or the performance of

21 the Clerk/Cashier job at any time between June 9, 2008 and the present.

22     **Response to Request for Production No. 45:**

23     Defendant objects to this Request as vague and ambiguous, including but limited to the

24 terms or phrases "reflecting," "anyone at CVS," "concerning," "use or potential use," "seats or

25 stools," "in connection with," "operation of a cash register," and "performance of his or her job."

26 Defendant objects to this Request because it seeks information that is neither relevant nor

27 reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this

28

OHSUSA:766173792.3

1  Request as overbroad in geographical scope and because the relevant time period begins on

2  September 18, 2008, one year preceding the date that Plaintiff filed her original complaint.

3  Defendant objects to this Request as unduly burdensome, oppressive, and harassing given that

4  compiling the information requested is unreasonably difficult and expensive. Defendant objects to

5  this Request as duplicative and cumulative of Plaintiff's prior discovery requests, including

6  Request for Production No. 11. Defendant objects to this Request because it seeks information

7  protected from disclosure by the attorney-client privilege and/or the attorney work product

8  doctrine. Defendant objects to this Request because it seeks third-party information that is

9  protected from disclosure by the right to privacy guaranteed by the United States and/or California

10  Constitutions.

11        **Plaintiff's Position Regarding RFP No. 45:**

12        This Request seeks only non-privileged documents reflecting "by or between anyone at

13  CVS" about the use or potential use of a seat. CVS can hardly argue that Clerk/Cashiers cannot do

14  their job seated if their own documents show the contrary. Responsive documents must exist

15  because some Clerk/Cashiers presented doctor's notes and subsequently were allowed to use seats.

16  *See* Dkt. 66-10 [Brunton]; 66-27 [Montes], both at ¶ 6.  Additionally, this Request, along with No.

17  46, seeks documents that may show any attempt by CVS to comply with the seating requirement

18  in Section 14(A) of the wage order, which is highly relevant to the issue of civil penalties. Cal.

19  Lab. Code § 2699(e)(2) (has discretion to adjust the amount of civil penalties based on the facts of

20  the case). To the extent CVS made no effort to comply with the seating requirement, the

21  maximum amount of penalties would be justified.

22        **Defendant's Position Regarding RFP No. 45:**

23        This request is even broader than Requests Nos. 43 and 44.  This expressly wants "all

24  documents" reflecting not just written communications, but any "oral communications," including

25  email, between "**anyone** at CVS" concerning the use of a seat over the course of 8 years.  Plaintiff

26  made no offer to narrow this request in any way.  This request is harassing, and Plaintiff does not

27  pretend that it is anything but that.  Today, alone, CVS employs over 240,000 people, but this

28

41

OHSUSA:766173792.3

1  request seeks communications from current and former employees over the course of 8 years.

2  Brown Dec. ¶ 9.  Accordingly, to satisfy Plaintiff's, Defendants would need to search the email

3  files for all of these employees.  *See id.*  This not reasonable.

4  Even narrowing this to California, the burden of this request is obvious.  As explained in

5  the Brown declaration, responding to this request would require countless man hours and work to

6  locate "all documents" for California stores, alone.  Brown Dec. ¶ 5-9.  Such time and expense is

7  unnecessary when Plaintiff's only proffered need for this information is to establish that certain

8  putative class members supposedly were able to perform their job duties while seated as a

9  reasonable accommodation.   Plaintiff says herself that she supposedly has some of this

10  information already, so why does she need "all documents" about this?  Indeed, Plaintiff refuses to

11  even limit the scope of this Request to stores within California – the geographic scope of this

12  lawsuit.  Plaintiff's refusal to do so underscores the harassing nature of this request.

13  Moreover, during deposition discovery, CVS already provided a corporate witness to

14  testify about this subject.  *See* Weil Dec., Ex. B (Pamela Larrabee Depo. Tr. 13:1-21:23

15  (Employee Relations Manager explaining that she sent an email out to her colleagues inquiring of

16  whether they ever received a request for as seat and provided testimony about her responses).

17  The Court should deny Plaintiff's motion.

18  Notwithstanding, CVS has provided a supplemental production to this Request on

19  December 12, 2016, which includes information from CVS's HR database description describing

20  instances where a California retail employee requested the use of a seat.  Weil Dec. ¶ 8.

21  **Request for Production No. 46:**

22  All documents reflecting any attempt by CVS to comply with Section 14(A) of the wage

23  order, including without limitation any analysis by CVS whether the nature of cashiering work

24  reasonably permits the use of a seat, whether the existing workstations could be modified to

25  accommodate seats, and/or what type of seat may be suitable.

26  **Response to Request for Production No. 46:**

27  Defendant objects to this Request as vague and ambiguous, including but limited to the

28

OHSUSA:766173792.3

terms or phrases "attempt," "comply," "analysis," "cashiering work," and "could be modified to accommodate seats." Defendant objects to this Request because it calls for legal conclusions. Defendant objects to this Request because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this Request as duplicative and cumulative of Plaintiff's prior discovery requests, including Request for Production No. 22. Defendant objects to this Request as overbroad in geographical and temporal scope. Defendant objects to this Request as unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing specific and general objections, Defendant responds as follows: Defendant will produce, or has already produced, relevant, responsive, non-privileged documents from the class period in its possession, custody, or control.

**Plaintiff's Position Regarding RFP No. 46:**

Whether CVS has ever tried to comply with Wage Order Section 14(A) is a fair question and directly relevant to the issue of penalties. The PAGA statute provides that a court may award a lesser amount than the maximum civil penalty based on the facts and circumstances of the particular case, if to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory. Cal. Lab. Code § 2699(e)(2). The extent to which CVS took its obligations to provide suitable seats seriously and attempted to comply with the law are facts and circumstances that are directly relevant to the issue of penalties. *See Thurman v. Bayshore Transit Management, Inc.,* 203 Cal.App.4th 1112, 1136 (Cal. App. 2012) (upholding reduction of PAGA penalties when undisputed evidence showed defendants took their wage order obligations seriously and attempted to comply with the law). CVS has responded that it "will produce, or has already produced, relevant, responsive, non-privileged documents from the class period in its possession, custody, or

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

1    control." However, nothing has been produced, CVS has not explained why the documents sought

2    could not lead to admissible evidence, and CVS has not identified any previously produced

3    documents it believes are responsive to Request 46.

4    **Defendant's Position Regarding RFP No. 46:**

5    Given that CVS has already committed to producing all responsive, non-privileged

6    documents in its possession responsive to this Request, it is unclear why Plaintiff chose to bring

7    this issue to the court's attention in this motion.  To the best of CVS' knowledge at this time, no

8    documents exist specific to this Request that have not already been produced.  If additional

9    responsive documents are identified, CVS will produce same, subject to its Rule 26 obligations.

10    Accordingly no issue exists and Plaintiff's motion is moot as to this Request.  For all of these

11    reasons, the court should deny Plaintiff's motion as to Request No. 46.

12    **Request for Production No. 49:**

13    Documents sufficient to show the identity or identities of the manufacturer(s) of the front-

14    end cash register stations at CVS stores in California.

15    **Response to Request for Production No. 49:**

16    Defendant objects to this Request as vague and ambiguous, including but limited to the

17    terms or phrases "sufficient," "manufacturer(s)," and "stations." Defendant objects to this Request

18    because it seeks information that is neither relevant nor reasonably calculated to lead to the

19    discovery of admissible evidence. Defendant objects to this Request as overbroad in geographical

20    and temporal scope. Defendant objects to this Request as unduly burdensome, oppressive, and

21    harassing given that compiling the information requested is unreasonably difficult and expensive

22    and would require a highly-individualized inquiry, which is inappropriate in a class action,

23    particularly at this pre-certification stage of litigation. Defendant objects to this Request to the

24    extent it seeks information protected from disclosure by the attorney-client privilege and/or the

25    attorney work product doctrine. Defendant objects to this Request because it seeks proprietary and

26    confidential information and/or trade secrets.

27    Subject to and without waiving the foregoing specific and general objections, Defendant

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

OHSUSA:766173792.3

1  responds as follows: Defendant will produce, or has already produced, responsive, non-privileged

2  documents from the relevant time period in its possession, custody, or control.

3  **Plaintiff's Position Regarding RFP No. 49:**

4  This is a simple and straightforward request that asks for documents that identify the

5  manufacturer(s) of the checkout stands CVS has used in its California stores. The information is

6  relevant to the issues of whether CVS' various check stand configurations are similar or different,

7  whether they can accommodate a seated cashier, and if they need to be modified to accommodate

8  a seated cashier, how much the modification would cost.  On October 24, 2016, CVS stated:

9  "Defendant will produce, or has already produced, responsive, non-privileged documents from the

10  relevant time period in its possession, custody, or control." However, more than a month later,

11  CVS has produced nothing, nor has it identified which earlier-produced documents are responsive.

12  **Defendant's Position Regarding RFP No. 49:**

13  CVS has already agreed to produce "all responsive, non-privileged documents from the

14  relevant time period in its possession, custody, or control."  Moreover, CVS produced additional

15  documents responsive to this request on December 7, 2016.  Weil Dec. ¶ 7.  Given CVS's

16  representation that it would produce responsive documents, it is unclear why Plaintiff chose to

17  burden this Court with a discussion of this Request.  In any event, in light of this production,

18  Plaintiffs' motion is moot as to this Request.

19  **Request for Production No. 51:**

20  All documents supporting any contention by CVS that the nature of the work of operating

21  a cash register at CVS does not permit the use of a seat.

22  **Response to Request for Production No. 51:**

23  Defendant objects to this Request as vague and ambiguous, including but limited to the

24  terms or phrases "supporting," "contention," "nature of the work of operating a cash register,"

25  "does not permit," and "the use of a seat." Defendant objects to this Request because it seeks

26  information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

27  evidence. Defendant objects to this Request because it seeks legal conclusions. Defendant objects

28

45

OHSUSA:766173792.3

to this Request to the extent Plaintiff misconstrues Defendant's obligation to provide seats under section 14 of Wage Order 7 to depend on whether the nature of the work of operating a cash register at CVS does not permit the use of a seat rather than a consideration of all relevant circumstances. Defendant objects to this Request as overbroad in geographical and temporal scope. Defendant objects to this Request as unduly burdensome, oppressive, and harassing given that compiling the information requested is unreasonably difficult and expensive and would require a highly-individualized inquiry, which is inappropriate in a class action, particularly at this pre-certification stage of litigation. Defendant objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving the foregoing specific and general objections, Defendant responds as follows: Defendant will produce relevant, responsive, non-privileged documents from the class period, if any exist, after Plaintiff significantly narrows the scope of this Request following an appropriate meet and confer.

**Plaintiff's Position Regarding RFP No. 51:**

CVS has provided no documents in response to the above Request, which asks for any documents supporting a claim that the nature of the work of operating a cash register does not permit the use of a seat. Nor has it suggested how or why this Request should be further narrowed in scope despite a three week meet and confer process.  Either CVS must produce responsive documents, or CVS should be barred from using any documents in opposition to class certification or at trial.  *See Fresno Rock Taco,* 2013 U.S. Dist. LEXIS 101428, *13-14.

**Defendant's Position Regarding RFP No. 51:**

As is the case with the preceding Requests, it is unclear why Plaintiff chose to burden this Court with a discussion of yet another Request to which CVS has already agreed to produce all responsive, non-privileged documents in its possession, custody, or control.  To the extent that Plaintiff is preemptively seeking to preclude CVS' use of documents at trial in the abstract, such issue is not yet ripe or before the court.  To the extent that Plaintiff seeks to compel CVS to

OHSUSA:766173792.3

1  produce documents it has already agreed to produce, this issue is moot.  In any event, this non-

2  issue need not be resolved by the court at this time.  For all of these reasons, the Court should

3  deny Plaintiff's motion as to this Request.

4       **Request for Production No. 52:**

5       All documents supporting any contention by CVS that there is no "suitable seat" that a

6  person operating the cash register at CVS could use.

7       **Response to Request for Production No. 52:**

8       Defendant objects to this Request as vague and ambiguous, including but limited to the

9  terms or phrases "supporting," "contention," "suitable seat," "operating the cash register," and

10 "could use." Defendant objects to this Request because it seeks information that is neither relevant

11 nor reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to

12 this Request because it seeks legal conclusions. Defendant objects to this Request to the extent

13 Plaintiff misconstrues Defendant's obligation to provide seats under section 14 of Wage Order 7 to

14 depend on whether there is a "suitable seat" that a person operating the cash register at CVS could

15 use rather than a consideration of all relevant circumstances. Defendant objects to this Request as

16 overbroad in geographical and temporal scope. Defendant objects to this Request as unduly

17 burdensome, oppressive, and harassing given that compiling the information requested is

18 unreasonably difficult and expensive and would require a highly- individualized inquiry, which is

19 inappropriate in a class action, particularly at this pre- certification stage of litigation. Defendant

20 objects to this Request to the extent it seeks information protected from disclosure by the attorney-

21 client privilege and/or the attorney work product doctrine.

22      Subject to and without waiving the foregoing specific and general objections, Defendant

23 responds as follows: Defendant will produce relevant, responsive, non-privileged documents from

24 the class period, if any exist, after Plaintiff significantly narrows the scope of this Request

25 following an appropriate meet and confer.

26      **Plaintiff's Position Regarding RFP No. 52:**

27      No documents have been produced by CVS in responding to this Request. The California

28

47

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC

1  Supreme Court made it clear that an employer has the burden of proving that no "suitable seat"

2  exists. "An employer seeking to be excused from the [seating] requirement bears the burden of

3  showing compliance is infeasible because no suitable seating exists." *Kilby*, 63 Cal.4th at 24.  To

4  the extent CVS refuses to produce documents responsive to this request, it should be precluded

5  from offering evidence to support its contention that no suitable seat exists. *See Fresno Rock*

6  *Taco*, 2013 U.S. Dist. LEXIS 101428, *13-14.

7  **Defendant's Position Regarding RFP No. 52:**

8  On its face, this request requires CVS to analyze each of its 3,480+ cash register stands to

9  determine if it has documents about whether a "suitable seat" is feasible at that location. *See*

10  DiTomasso Dec. ¶ 5.  As discussed above, CVS has agreed to do this for Plaintiff's store, but

11  doing this for all 3,480+ cash register stands is unwieldy. *Id*. ¶¶ 4-8.; *see* Weil Dec. ¶ 6.

12

13  December 12, 2016                     KEVIN J. MCINERNEY

14
                                          /s/ Kevin J. McInerney
15                                        _____
                                          KEVIN J. MCINERNEY
16                                        Attorneys for Plaintiff Nykeya Kilby

17  December 12, 2016                     ORRICK, HERRINGTON & SUTCLIFFE LLP

18
                                          /s/ Michael Weil
19                                        _____
                                          MICHAEL WEIL
20                                        TIMOTHY J. LONG
                                          Attorneys for Defendant CVS Pharmacy, Inc.
21

22

23

24

25

26

27

28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE
CASE NO. 09-CV-2051-MMA-KSC