JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA M. LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Tel: (760) 209-6565 x 101
Fax: (760) 209-6565

KEVIN J. MCINERNEY (46941)
kevin@mcinerneylaw.net
18124 Wedge Parkway, #503
Reno, Nevada 89511
Tel: (775) 849-3811

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKEYA KILBY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC.<br><br>Defendant. | CASE NO. 09-CV-2051-MMA-KSC<br><br>**DECLARATION OF KEVIN J. MCINERNEY IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>Judge:   Hon. Karen S. Crawford |

I, Kevin J. McInerney, declare as follows:

1. I have practiced law for forty-nine years and was admitted to practice in this District by the Honorable Howard B. Turrentine in 1970.

2. I have served as lead or co-lead counsel in approximately one hundred class and representative actions in the federal and state courts.

3. I have served as one of the counsel for Nykeya Kilby, the plaintiff, since this action commenced in 2009. I am familiar with the case. For example, I argued her motion for class certification in 2011, and actively participated in the appeals to the Ninth Circuit and California Supreme Court. More recently I appeared telephonically for the Case Management Conference of August 22, 2016.

4. In 2009, I joined with James F. Clapp, a San Diego attorney, and Matthew Righetti, a San Francisco attorney, to prosecute a number of employers under the California Private Attorneys General Act for their failure to provide seats to workers. I am familiar with California's seating law which is set forth in Wage Order 7-2001, Section 14. I have spent in excess of ten thousand hours litigating this Wage Order and on five resultant appeals, all five of which yielded decisions favorable to the workers.

5. On June 6, 2009, Ms. Kilby filed her pre-filing PAGA notice pursuant to Labor Code § 2699.3. On September 18, 2009, she filed her Complaint.

6. In the instant case, James Clapp and I have shared primary responsibility. Specifically, two months ago we divided up the work of preparing for a renewed class certification motion after this Court set a discovery cut-off date of February 27, 2017. Accordingly, Mr. Clapp prepared and served in September the written discovery now at issue (Plaintiff's Third Request for Interrogatories and Plaintiff's Fourth Request for Production of Documents).

7. On October 24, 2016, Mr. Michael Weil timely mailed CVS's responses to the above discovery requests. As this Court will see, to almost all of the requests, CVS responded not with answers or documents, but with a pledge that CVS would provide substantive responses after a meet and confer and after plaintiff significantly narrowed the scope of the requested discovery.

8. Unfortunately, CVS mailed its responses to Mr. Clapp to the firm he left over a year before. Mr. Clapp had provided this Court and defense counsel with his new address of 701 Palomar Airport Road, Suite 300, Carlsbad, California 92011 (*See* Doc. 149 filed January 12, 2016) and, of course, that address was on both written discovery requests he sent to CVS.

9. I received the CVS responses on October 27, 2016, which is timely, however, did not realize that Mr. Clapp had not received the responses until about a week later. When the problem was realized, I volunteered to fill in and undertake the meet and confer process. On Monday, November 7, 2016 in the afternoon, I followed-up an earlier voicemail to Mr. Weil by sending an email suggesting five time slots to confer. (*See* Exhibit 1).

10.     Our first meet and confer took place on November 9, 2016, and lasted ninety minutes. Much of this was devoted to trying to resolve the contention of CVS that the counter designs and register placement of its cash registers varied so much that, coupled with a lack of drawings that responses were a near impossibility. In 2011, CVS successfully opposed certification by arguing among other things that its cashier workstation differed in material aspects. Mr. Weil suggested that we should focus on the stores mentioned as examples by CVS in its 2011 opposition to certification.

11.     I had concerns that those examples might only be anecdotal and certainly outdated, given the number of stores that had closed, opened or had been remodeled in the intervening years. Indeed, Mr. Clapp and I are aware that CVS stores we visited for personal shopping have been remodeled since 2011. Nonetheless, I told Mr. Weil I would re-read the opposition papers and I did before our next meet and confer. However, when I did review them I found my concerns were legitimate.

12.     During the first meet and confer, I suggested that CVS might designate either a certain number of stores or checkout counters as representative of others but this was not accepted. I then proposed something that had been accepted in another case. I suggested that CVS could send an email to each of its California stores to inquire of the managers what type counters his or her store actually has. To make this bulletproof, I said the managers could snap a few photos of the checkouts. (*See* Exhibit 2). While it would fall on the plaintiff to organize and analyze these responses, it would take a manager only a few minutes to complete the tasks. Plaintiff's counsel wants to get objective evidence for experts and the district court to look at rather than, as in 2011, anecdotal and imprecise declarations that "this store has such and such a feature." This suggestion was left open.

13.     During the initial meet and confer, another topic discussed at length was the contact information for class members. In 2011, CVS had provided such information and Mr. Weil suggested that CVS could simply update the contact addresses for those individuals. I expressed concern that those employees worked at CVS and would not include the last five plus years. The same was true for the interrogatory dealing with the cashiers who, because of a

3
DECLARATION OF KEVIN J. MCINERNEY
CASE NO. 09-CV-2051-MMA-KSC

medical condition, had been provided with a seat. We did not reach the last of the document requests, agreed we would reflect further on our discussion and would set up another session in the following week.

14. The next Tuesday, November 14, 2016, I called Mr. Weil. He was in a meeting, but I spoke with Christine Flores, his secretary. She said he appeared to be open on that Thursday, November 16th. I asked her to speak with him about that date. However, the next day I received an email from Mr.Weil saying that he would be unable to meet and confer that week. (*See* Exhibit 3).

15. On Monday, November 21, 2016, I called Mr. Weil to continue our meet and confer. This lasted only about fifteen minutes. Mr. Weil explained that he wished to confer with his client about my proposal now that I had "put something in writing." We also discussed the possibility of seeking an extension from this Court of thirty days of the forty-five day deadline to file a motion to compel.

16. After this call, I did consider a request for an extension. However, I concluded that since nothing had been produced and there was not even an assurance of anything being produced, any extension would jeopardize the plaintiff's case in light of the February 27, 2017 discovery cut-off date. I so advised Mr. Weil by my email of November 23rd and cautioned that I would be litigating a motion to compel. (*See* Exhibit 4).

17. Last week I emailed Mr. Weil that I was available Monday, Tuesday and Wednesday mornings (November 28th-30th) (*See* Exhibit 5). Mr. Weil has responded that he will call me Thursday at 4:00 p.m.

18. On December 2, 2016, I had a final meet and confer with Mr. Weil that lasted about 65 minutes. I took him through each interrogatory and document request. Regarding Interrogatory No. 17, which asks for a description of the various checkout configurations, Mr. Weil said his client rejects seeking information from the store managers via email. He said he was trying to get plans for about a hundred stores. He was uncertain what they would show; and, he did not know when they would be produced. Regarding No. 20, which relates to remodels, he said he was trying to get information. Regarding No. 23, he stated that he would

1  disclose class member contact information only if we agreed to a second deposition of the
2  plaintiff.  I explained that was not at all related to the discovery responses at issue and that my
3  co-counsel had corresponded with Mr. Long on why a second deposition was not justified.
4  Regarding No. 24, which asks for contact information for former store managers, Mr. Weil said
5  CVS refuses to provide this.  Regarding No. 25, which asks about cashiers who used seats, he
6  said that he is looking for documentation.  I said that apart from recollections that there should
7  be not only ADA documents but Workers' Compensation documents as well.  The final
8  responses to the document requests were essentially the same. In response to Plaintiff's
9  discovery, Plaintiff has received no substantive responses and no documentation.

10         19.    The facts stated in this instant Joint Motion re Discovery Dispute are true and
11 correct.

12         This declaration is true and correct and based upon personal knowledge. I execute this
13 declaration under penalty of perjury under the law of the United States at Reno, Nevada on
14 December 12, 2016.

                                           /s/ Kevin J. McInerney
                                           Kevin J. McInerney
                                           *Attorney for Plaintiff Kilby*