TIMOTHY J. LONG (STATE BAR NO. 137591)
tjlong@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017-5855
Telephone: (213) 629-2020
Facsimile: (213) 612-2499

MICHAEL D. WEIL (STATE BAR NO. 209056)
mweil@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

Attorneys for Defendant
CVS PHARMACY, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKEYA KILBY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No. 09 CV 2051 L CAB<br><br>**DECLARATION OF DANIEL DITOMMASO IN SUPPORT OF DEFENDANT IN JOINT MOTION FOR DETERMINATION OF DISPUTE RE: PLAINTIFF'S THIRD SET OF INTERROGATORIES AND FOURTH SET OF DOCUMENT REQUESTS** |

1   I, Daniel DiTommaso, hereby declare as follows:

2   1.   I make this Declaration in support of Defendant CVS Pharmacy, Inc. ("CVS") in the Joint Motion for a Determination of Dispute Regarding Plaintiff's Third Set of Interrogatories and Fourth Set of Document Requests. All of the information set forth herein is based on my personal knowledge and if called and sworn as a witness, I could and would competently testify thereto.

2.   I currently hold the title of Senior Manager of Store Layout and Design for CVS. I have held this position since joining CVS in December 2007.

3.   In my current position, I oversee and work with a team of layout coordinators who have the responsibility of designing (and re-designing) the layout of the sales floor, excluding the pharmacy space, for each retail store location at CVS. In designing each store's layout, my team makes decisions regarding the various components, from fixtures and free-floating racks to the checkout stations. These design decisions must be tailored to each store's unique size, shape, and cluster demographics, among other things. I am also responsible for developing concepts and design elements to improve store efficiency and customer satisfaction.

4.   I understand that Plaintiff has requested several categories of information regarding or relating to the checkout stations used at CVS retail stores in California to determine their degrees of variation. In particular, it is my understanding that Plaintiff seeks (1) descriptions of all the cashier stands and configurations used in all CVS stores in California; (2) exact measurements of the amount of workspace behind and around CVS registers as well as an explanation for each stand why the measurements preclude a seat; (3) descriptions of the unique attributes of the register stands in CVS stores and why they preclude the use of a seat; (4) the available distance between the check-out stands and the product walls and why that distance might preclude a seat; and (5) identification of stores that have undergone a remodel of front-end cashier stands or counters, along with information concerning the nature, date, and cost of each remodel.

5.   CVS currently operates about 870 stores throughout California. Since September 19, 2008, CVS has operated a total of approximately 940 different stores in the state. Each store

- 1 -

has between four (4) and twelve (12) point of sale locations in the front of the store, depending on the size and volume of the store. Because CVS does not maintain records of what Plaintiff is looking for above, it would be extraordinarily burdensome for CVS to compile the full range of information requested because it would require a physical site visit to every CVS retail store location to analyze and measure the cash stands themselves and well as the distances around the cash wraps.

6. CVS stores vary significantly in size, layout, and configuration, and some of that variation may be attributed to CVS' expansion strategy in California. In 2008, CVS acquired Longs Drugs Stores, a separate company, and all of its hundreds of stores in California. CVS has also acquired hundreds of Sav-On Drug Store stores and several Rite-Aid stores in California. When ownership of these retail store locations was transferred to CVS, their design and layout—along with the checkout stations—frequently did not undergo any renovations. As a result, CVS inherited the various layout and design choices made by Longs Drugs, Sav-On and Rite-Aid. And, within that, these retailers—particularly Longs Drug Stores—did not use the same dimensions or cash wrap configurations among their own population of stores. Over the years, CVS has also built new stores in California consistent with CVS's designs. As a result, the store layouts and cash wrap designs in California vary greatly in design, size, and checkout style.

7. CVS also does not use uniform models or measurements to construct its checkout stations in the company's retail stores. In general, for new constructions, checkout stations are each tailored and optimized for their respective store's size, layout, configuration, adherence to ADA regulations, and other individual attributes. The wide range of modifications that have been used to design CVS' checkout stations has made it difficult to describe any with generic characterizations. Due to the lack of reliance on standardization in CVS' store design process, checkout stations may also have unique attributes.

8. Due to the absence of records for the type of detailed information requested by Plaintiff and the broad range of material variations, compiling the data necessary to respond would require CVS to coordinate physical site visits to 870 California retail store locations. This would impose considerable costs and burdens from any reasonable perspective. At minimum,

- 2 -

1 | CVS would have to create a budget to hire contractors for this discrete project or identify existing
2 | employees willing to suspend their current responsibilities to participate in this project; CVS
3 | would have to organize assignments and schedules across the state to prevent redundant work;
4 | and CVS would have to collect the recorded data and review them internally for accuracy. This
5 | entire process would involve weeks, if not months, of effort, which is impractical given the
6 | action's current schedule and anticipated trial date.

7 |     9.     I understand that plaintiff has suggested that the company send questionnaires to
8 | the 870 store managers of California CVS stores to measure, photograph, and describe the cash
9 | wraps. This is not feasible for a number of reasons. First, cameras and tape measures are not a
10 | standard tool that CVS makes available to its stores. CVS would need to buy 870 cameras and
11 | tape measures to make that work. There is a huge amount of error that would be built into this
12 | process and no guarantee that the 870 store managers would use the same standards for describing
13 | the cash wraps. In my opinion, to do what Plaintiff asks effectively, it would require someone to
14 | visit all 870 CVS stores.

17 | I declare under penalty of perjury under the laws of the United States and California that
18 | the foregoing is true and correct. Executed this 12th day of December, 2016.

                                                        DANIEL DITOMMASO

- 3 -

DECLARATION OF DANIEL DITOMMASO ISO DEFENDANT IN JOINT MOTION FOR DETERMINATION OF DISPUTE
RE: PLAINTIFF'S THIRD SET OF INTERROGATORIES AND FOURTH SET OF DOCUMENT REQUESTS