1  JAMES F. CLAPP (145814)
   jclapp@clapplegal.com
2  MARITA M. LAUINGER (199242)
   mlauinger@clapplegal.com
3  CLAPP & LAUINGER LLP
   701 Palomar Airport Road, Suite 300
4  Carlsbad, CA 92011
   Tel:  760-209-6565
5  Fax: 760-209-6565

6  KEVIN J. McINERNEY (46941)
   kevin@mcinerneylaw.net
7  18124 Wedge Parkway #503
   Reno, NV 89511
8  Tel.: 775-849-3811
   Fax: 775-849-3866

9
   Attorneys for Plaintiff
10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13  NYKEYA KILBY, individually and on        CASE NO. 09-CV-2051 MMA KSC
    behalf of all others similarly situated,
14                                           **JOINT MOTION FOR**
15              Plaintiff,                    **DETERMINATION REGARDING**
                                             **30(B)(6) DEPOSITION TOPIC NOS.**
16  vs.                                      **37-42**

17  CVS PHARMACY, INC.                       Judge:   Hon. Karen S. Crawford

18
                Defendant.
19

20

21  I.     **SERVICE**

22         Plaintiff Nykeya Kilby ("Plaintiff") served a copy of her portion of this motion

23  on defense counsel by email five court days before filing this motion.

24  II.    **TOPIC NOS. 37-42 OF PLAINTIFF'S FEBRUARY 17, 2017 30(b)(6)**

25         **DEPOSITION NOTICE.**

26         A.     **Plaintiff's Position**.

27         This is a class action alleging that defendant CVS Pharmacy, Inc. violated

28  section 14 of California Wage Order 7-2001 by failing to provide its Clerk/Cashiers

in California with seats for use at the front-end cash registers.  Despite service of a timely and proper 30(b)(6) notice by plaintiff, defendant has categorically refused to produce a witness to testify about six topics involving six CVS stores in San Diego County.  Defendant should be ordered to produce the witness immediately.

Under the Federal Rules of Civil Procedure, discovery is supposed to be self-executing—one party serves discovery and the other responds, without the need for court involvement.  *HM Elecs, Inc. v. R.F. Techs., Inc.*, 2014 U.S. Dist. LEXIS 173669, *2 (S.D. Cal. Dec. 15, 2014).  If a dispute arises, the parties and their counsel are required to meet and confer in good faith for the purpose of resolving the dispute.  S.D. Cal. Civ. L.R. 83.4(1)(d).  Only in rare circumstances—*e.g.*, when a discovery dispute involves a serious claim of privilege—should a discovery dispute require court intervention.

The system has broken down in this case, through no fault of plaintiff.  Since the discovery stay was lifted in September 2016, defendant has failed to answer a *single* interrogatory, turn over a *single* document, or produce a *single* witness for deposition voluntarily and on time.  For example, plaintiff served her third set of interrogatories and fourth request for production on September 19 and 20, 2016, respectively.  Defendant asserted boilerplate objections and refused to answer a single discovery request, despite multiple attempts by plaintiff to meet and confer.  Plaintiff filed a joint motion for determination of discovery dispute on December 12, 2016 (ECF 160), which remains pending.  Most prejudicial to plaintiff is the fact that defendant continues to withhold the names and contact information of putative class members who have worked for defendant during the five years this case was on appeal, which is preventing plaintiff from gathering evidence about defendant's recent employment practices to support her renewed motion for class certification, now due on April 24, 2017.  Plaintiff is clearly entitled to the contact information. *See Hernandez v. Best Buy Co.*, 2014 U.S. Dist. LEXIS 147630, *23 (S.D. Cal. Oct. 15, 2014) (Crawford, M.J.) (ordering production of contact information of putative

class members because plaintiff is "entitled to test his class allegations to determine whether certification is feasible" and "cannot do so under the circumstances without contacting other potential members of the class"); *Wiegele v. Fedex Ground Package Sys.*, 2007 U.S. Dist. LEXIS 9444, *6-7 (S.D. Cal. Feb. 8, 2007) (Miller, J.) (upholding Magistrate Judge Porter's order requiring defendant to disclose the names and contact information of putative class members since they might have discoverable information about defendant's employment practices);   Declaration of James F. Clapp, filed herewith, ¶ 2.[1]

Next, on December 13, 2016, plaintiff served a fifth request for production asking for documents showing the manufacturers and model numbers of the cash register checkstands in defendant's California stores.  Although CVS claims its 800 California stores vary in terms of size and layout, in reality, its front-end checkstands are standardized and produced by one of three manufacturers: Lozier, Killion, or idX.  Plaintiff's task on class certification will be greatly simplified if it can determine what type of standardized checkstand exists in each store.  Defendant claims it has no documents that show this information, but one of the manufacturers, Lozier, says CVS should have shipping documents, purchase orders, and invoices reflecting hundreds of shipments of Lozier checkstands to defendant's stores in California.  Defendant says it is still "looking" for responsive documents, but so far nothing has been

---

[1]    Defendant repeatedly argues that plaintiff is not entitled to additional contact information of putative class members because plaintiff received a list of approximately 3,500 class members in 2011.  However, this six year old list is stale.  Plaintiff has tried to use the list to contact Clerk/Cashiers who are recent employees of CVS, but in the vast majority of cases, the contact information is no longer valid.  Clapp Dec. ¶ 2.  Furthermore, as with most retailers, the turnover rate at CVS is high, which means that a six year old list will contain few if any people who recently worked for the company.  It is patently unfair that defendant has exclusive access to the recent employees who have knowledge of defendant's current employment practices, while plaintiff is relegated to using a stale list that is six years old.  *See Wiegele*, 2007 U.S. Dist. LEXIS 9444, *2 ("As a general rule, before class certification has taken place, all parties are entitled to *equal access* to persons who potentially have an interest in or relevant knowledge of the subject of the action but who are not yet parties." [Emphasis added.])

1    produced in more than 10 weeks of looking. Clapp Dec. ¶ 3.

2      On January 10, 2017, plaintiff served a 30(b)(6) deposition notice on

3 defendant.  Plaintiff served notices for additional deposition topics on January 27 and

4 February 17, 2017.  To date, defendant has failed to produce a single witness for

5 deposition; instead, it claims none of its witness is available until March 16, 2017,

6 more than two months after service of the original notice and two weeks after the

7 current discovery cut-off.  Although defendant has agreed to waive the discovery cut-

8 off with respect to this deposition, defendant's delay will prevent plaintiff from taking

9 follow-up discovery on matters that are uncovered during the deposition.  Clapp Dec.

10 ¶ 4.[2]

11      The instant motion involves six deposition topics regarding six CVS stores in

12 San Diego: store 9114 (1299 Broadway, El Cajon), 9109 (6265 El Cajon Blvd., San

13 Diego), 9212 (4404 El Cajon Blvd., San Diego), 9177 (8260 Mira Mesa Blvd., San

14 Diego), 9111 (16773 Bernardo Center Dr., Rancho Bernardo), and 9187 (683 Lomas

15 Santa Fe, Solana Beach).  Plaintiff believes these six stores are representative of

16 hundreds of other CVS stores in California.  Plaintiff seeks deposition testimony on

17 the following topics (Clapp Dec. Exhibit 1):

18      •    the identity of each Clerk/Cashier who worked in any of the six stores

19 during the class period (June 9, 2008 to the present) [Clapp Dec. Exhibit 1, Topic 37];

20

21 _____

22 [2]      There are still other examples of defendant's failure to comply with discovery.  After
claiming for months that it did not have floor plan diagrams for each of its California stores,

23 defendant produced 700 pages of floor plan documents on January 31, 2017, more than three months
after they were originally due.  This delay has prejudiced plaintiff's ability to identify stores with

24 similar configurations and prepare her expert to testify.  Clapp Dec. ¶ 5.  Furthermore, at a store
inspection on February 24, 2017, defendant refused to identify and allow plaintiff's expert to

25 photograph the seat that one of CVS' Clerk/Cashiers uses while operating the front-end cash

26 register—even though defendant agreed in writing it would not "alter the workstations or manipulate
the activities or schedules of its employees in connection with the inspection."  Obviously, the fact

27 that a Clerk/Cashier uses a seat is critical because it proves that the nature of cashiering work
reasonably permits the use of a seat, thereby entitling all Clerk/Cashiers to seats.  Clapp Dec. ¶ 5.

28 Notably, CVS does not deny any of these examples of its refusal to comply with discovery.

1    • the identity of each Store Manager, Store Manager in Training,
2 Operations Manager, or Shift Supervisor who worked in any of the six stores during
3 the class period [Topic 38];

4    • the identity of each Clerk/Cashier who used a seat at the front-end
5 checkstand at any of the six stores during the class period, and to the extent there are
6 such Clerk/Cashiers, the nature of any criticism they received for using a seat [Topic
7 39];

8    • the identity of any customer who has complained about a Clerk/Cashier
9 using a seat at any of the six stores during the class period [Topic 40];

10    • the identity of any Clerk/Cashier who has requested the use of a seat at
11 any of the six stores during the class period [Topic 41]; and

12    • the total number of pay periods worked by all Clerk/Cashiers at the six
13 stores during the class period [Topic 42].

14    Plaintiff noticed the deposition on these for February 27, 2017 (although
15 plaintiff offered to work with defendant to schedule the deposition at a mutually
16 convenient date and time). Clapp Dec. Exhibit 1-2. On Friday, February 24, 2017 at
17 5:47 p.m., one court day before the deposition was scheduled to occur, defendant's
18 counsel emailed a letter to plaintiff's counsel refusing to produce a witness for the
19 above-listed topics. Defendant objected on the following basis:

20    "Topic Nos. 37-42 are really Requests for Production/Special
21    Interrogatories disguised as deposition topics. Plaintiff's time to
       propound written discovery expired weeks ago, and Plaintiff had
22     ample opportunity before to propound these requests. Requiring a
       CVS witness to state pay period data and list of employees' and
23     customers' identities in a deposition is nonsensical and burdensome,
       and Plaintiff could not have seriously believed that CVS could have
24     prepared a witness on such a topic in 10 days. These topics are an
25     obvious end-run around the class certification discovery cut-off.
       CVS will not produce a witness." Clapp Dec. Exhibit 3.
26
27
28

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE        09-CV-2051 MMA KSC

After receiving the letter on February 24, plaintiff's counsel contacted defendant's counsel and asked them to reconsider their position or make a compromise proposal. Clapp Dec. Exhibit 4.  Defendant did not appear for the deposition on February 27.  On the evening of February 27, plaintiff's counsel again contacted defendant's counsel and asked them to reconsider their position, citing the cases listed below.  Clapp Dec. Exhibit 5.  Plaintiff's counsel followed up with a telephone call to defense counsel on February 28.  The parties ultimately met and conferred by telephone on March 8, 2017.  They were unable to resolve this dispute. Clapp Dec. ¶ 7.

Defendant's objections to Topic Nos. 37-42 are frivolous. First, the fact that plaintiff could have requested this information through interrogatories or requests for production does not foreclose plaintiff from obtaining the information through a 30(b)(6) deposition.[3]   Plaintiff is entitled to obtain discoverable information through any method permitted by the federal rules. *SEC v. Goldstone*, 2014 U.S. Dist. LEXIS 122206, *112-13 (D.N.M. Aug. 23, 2014) ("The parties have a right to choose their discovery method and do not have to follow a particular sequence."); *EEOC v. Caesars Entertainment, Inc*., 237 F.R.D. 428, 433 (Rule 26 "provides parties with their choice of discovery methods under the Federal Rules of Civil Procedure"); *BB&T Corp. v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006) ("The Federal Rules of Civil Procedure favor unhampered discovery and, normally, the choice of discovery methods should be left to the parties."); *Dongguk Univ. v. Yale Univ*., 270 F.R.D. 70, 74 (D. Conn. 2010) (a party is not foreclosed from taking a 30(b)(6) deposition "just because the topics proposed are similar to those contained in

---

[3]    In fact, plaintiff *did* request the information sought by Topic Nos. 37-39 in her third set of interrogatories.  (*See* ECF 160, pages 26-33, Interrogatory Nos. 23-25.)  Defendant refused to provide the information.

documents provided or interrogatory questions answered.")[4]

Second, the topics are not unduly burdensome.  It is not burdensome to require defendant to prepare a list of employees who held certain job titles at six stores and read that list at a deposition.  Nor is it burdensome for defendant to identify the handful of employees who used or requested a seat at those six stores, or any customers who might have complained about the employees' use of seats. Furthermore, the number of pay periods worked by Clerk/Cashiers at each store is available electronically.  In total, it would take defendant perhaps 10 minutes per store to pull this information.[5]

Third, the requested information is discoverable.[6]   As noted above, this Court has already held that a class plaintiff is entitled to discover the names and contact information of putative class members.  *Hernandez*, 2014 U.S. Dist. LEXIS 147630, *23; *see also Wiegle.*, 2007 U.S. Dist. LEXIS 9444, *6-7.  Similarly, in *Cedano v. Thirfty Payless, Inc.*, 2011 U.S. Dist. LEXIS 155956, *40-42 (D. Or. May 9, 2011), the court held that plaintiff was entitled to discover the names and contact information of management-level employees who were not class members because they are likely to have discoverable information about defendant's employment practices.  In this case, defendant's current and former store managers will have information about which Clerk/Cashiers used seats and whether the nature of the work reasonably

_____

[4]     A handful of courts have refused to allow a 30(b)(6) deposition as a substitute for a contention interrogatory. *See, e.g., JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) (denying 30(b)(6) deposition about defendant's "mental impressions, conclusions, opinions, and legal theory").  However, in this case, Topic Nos. 37-42 do not involve defendant's contentions—they ask for purely factual matters such as the identities of people who held a particular job title.

[5]     Defendant disputes this 10-minute time estimate, but it defendant offers no competent evidence about how much time it would take to gather the information.  As this Court has ruled, defendant has the burden of proving a discovery request is unduly burdensome.  *Hernandez*, 2014 U.S. Dist. LEIXS 147630, *9.  The burdensome objection must be overruled.

[6]     Plaintiff notes defendant has *not* objected that the information sought is not discoverable, private, or covered by a privilege.  Accordingly, any objection on any of these grounds is waived.

1  permits the use of seats.   Furthermore, to the extent defendant argues its

2  Clerk/Cashiers should not be given seats because customers expect them to stand,

3  plaintiff is entitled to discover the identity of any customer who complained about

4  seated cashiers.   Finally, the number of pay periods worked by Clerk/Cashiers is

5  relevant to penalties under PAGA.  Cal. Lab. Code § 2699(e)(2) (penalties accrue at

6  $100/$200 per pay period per violation).

7        A party who prevails on a motion to compel is entitled to recover his or her

8  expenses, including reasonable attorneys' fees, unless the losing party was

9  substantially justified in opposing the motion.  Fed. R. Civ. P. 37(a)(5).  The burden

10  is on the losing party to prove substantial justification.  *Lorillard Tobacco Co. v.*

11  *Elston Self. Serv. Wholesale Groceries*, 259 F.R.D. 323, 327 (N.D. Ill. 2009).  In 27

12  years of practice, plaintiff's counsel has only asked for sanctions in a discovery

13  motion once.  Although there is absolutely no justification for defendant's refusal to

14  produce a witness in response to plaintiff's timely and proper notice, plaintiff will

15  refrain from asking the Court to award sanctions, but plaintiff respectfully requests

16  that the Court admonish defendant and its counsel to comply with their discovery

17  obligations in the future.

18        In terms of timing for the deposition, the current deadline for plaintiff to move

19  for class certification is April 24, 2017.  As explained in her request to continue the

20  deadlines (ECF 169), plaintiff needs an additional 90 days to complete discovery.

21  However, if the Court is not inclined to continue the deadlines, or intends to grant less

22  than 90 days, defendant should be ordered to appear for this deposition in San Diego

23  or Los Angeles no later than March 17, 2017.[7]

24

25  _____

26  [7]     Defendant repeatedly argues plaintiff's deposition should be denied because plaintiff has "back-loaded" discovery close to the cut-off. This is nonsense.  One week after the discovery stay was lifted in September 2016, plaintiff served a comprehensive set of interrogatories and requests

27  for production seeking to understand the basis for defendant's claim that "every store is different"

28  and therefore class certification is inappropriate.  Defendant failed to answer a single interrogatory

### B.   CVS's Position

#### 1.   Introduction

Plaintiff confuses a "broken" discovery process with CVS's good faith and well-placed objections to Plaintiff's overbroad and improper discovery.   Plaintiff omits from her argument the tremendous volume of discovery, deposition testimony, and interrogatory responses already in her possession that CVS produced both before and after the California Supreme Court heard this case.   She also fails to note that, in response to virtually every objectionable request for production, interrogatory, and deposition topic, CVS has offered various compromises and alternatives that would provide Plaintiff with substantially more information than she currently has.   In large part, Plaintiff outright has rejected CVS's proposals.   In Plaintiff's view, unless CVS concedes to every burdensome or inappropriate request Plaintiff propounds, the system is "broken."

---

or produce a single document in response to the discovery, so plaintiff was forced to file a discovery motion on December 12, 2016.  (ECF 160.)  As is customary in litigation practice, plaintiff wanted to have the interrogatory responses and all relevant documents before noticing depositions. After the motion had been pending for three weeks without a ruling, plaintiff thought it prudent to notice a 30(b)(6) deposition (served on January 10, 2017) and begin meeting and conferring about dates, hoping that the interrogatory responses and documents would be produced before the depositions occurred.  On January 31, 2017, defendant produced for the first time 700 pages of floor plan documents—which for months it claimed did not exist—which caused plaintiff to realize that six stores in San Diego County are, in terms of layout and checkstand configuration, representative of a large percentage of CVS's California stores.  This led plaintiff to notice an inspection of the six stores (which took place on February 24, 2017) and notice the deposition regarding the six stores that is the subject of this motion.  If plaintiff's focus on the six stores came late in the discovery process, it is because (1) defendant failed to answer the September 2016 discovery, which would have provided the requested information for _all stores in California_, not just the six stores; and (2) defendant did not produce the floor plan documents until January 31, 2017, which was the first indication plaintiff had that the six stores are representative.  CVS cannot legitimately claim that plaintiff has been dilatory in seeking discovery: since the stay was lifted in September 2016, plaintiff has served a set of interrogatories, three requests for production of documents, a demand for physical inspection, three deposition notices, and three third-party subpoenas (because CVS refused to produce information about its standardized checkstands).  As of this writing, plaintiff has also filed two discovery motions.  The problem is that CVS is not complying with its discovery obligations. Clapp Dec. ¶ 8.

With respect to Plaintiff's Fourth 30(b)(6) Notice of Deposition ("Notice"), the Court should consider the topics not just based on their content, but also when Plaintiff propounded them in the context of this case. On February 17, 2017, exactly ten calendar days before the close of fact discovery, Plaintiff hand-served the Notice and scheduled it on a date without first discussing it with defense counsel. To date, Plaintiff has noticed over 65 topics in this case, 42 in the last five weeks of discovery. CVS has agreed to produce witnesses on the majority of Plaintiff's noticed topics, and was meeting and conferring with Plaintiff on others when Plaintiff propounded her latest Notice.

The topics themselves are really disguised requests for production. To respond, CVS necessarily must query its various databases to pull data that would be responsive to topics, such as the names of CVS employees who worked in six different stores over the last *nine* years. These are requests that Plaintiff could have propounded months or even years ago. She gives no excuse for waiting so long to propound them. But as she surely knows, it is a virtual impossible task for CVS to query databases and quality control data in just ten calendar days so that a witness could competently testify regarding the topics. Indeed, there is no way Plaintiff could have thought CVS would be able to respond in time before the February 27 discovery cut-off in this case.

Given the foregoing, plus the avalanche of other discovery that Plaintiff back loaded to the very end of discovery, CVS finally drew the line and told Plaintiff enough is enough. CVS also objected because the requests themselves seek private information, particularly identifying information about CVS's *customers*. As set forth more fully below, the Court should deny Plaintiff's motion.

      **2.**    <u>**Background**</u>

            **a.**    <u>**CVS Has Already Produced A Substantial Amount Of Discovery.**</u>

Significant to the Court's analysis, CVS has provided Plaintiff with an overwhelming abundance of documents and information.  Plaintiff filed this lawsuit on September 18, 2009, alleging that she and a class of similarly-situated individuals employed by CVS in California as "Clerk/Cashiers" were entitled to seating while performing their cashiering duties under Section 14 of California's IWC Wage Order 7-2001.  In the two following years, Plaintiff sought and received extensive written discovery from CVS, including:

- The names and contact information for almost *3,500* putative class members;

- Approximately 1,700 pages of documents, including documents reflecting some of the checkout station designs used in some CVS California stores;

- Interrogatory responses regarding the responsibilities, duties and expectations of the Clerk/Cashier position;

- A sampling of photographs and measurements of cash stands from a cross-section of 20 stores throughout California (*e.g.,* Santa Clara, Los Angeles, Chico, Rancho Cordova, Red Bluff, Solana Beach, Walnut Creek, Rohnert Park) (*see* Dkt. 163, Declaration of Michael D. Weil, December 12, 2016, Ex. A);

- Job descriptions, operations manuals, training manuals, and training videos;

- Documents specific to Plaintiff's employment (including time punch report and personnel file);

- Human resources policies and related documentation;

*Id.* at ¶¶ 3-4.  During that same timeframe, Plaintiff also took nine depositions, including:

- CVS's Vice President of Store Operations (Hank Casillas);

- CVS's Area Human Resources Director for Area 18 (Sandy Reynoso).  Area 18 encompassed Northern California and south to approximately Bakersfield;

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE                    09-CV-2051 MMA KSC

- A CVS Employee Relations Manager (Pamela Larrabee);
- Two CVS Regional Managers (Ken Mahoney and Doug Palmieri);
- A CVS Store Manager (Doug Leibelt);
- Corporate representative depositions pursuant to Rule 30(b)(6) regarding more than 20 different topics.  These topics were handled by:  (a) CVS's Manager of Store Layout and Design; (b) CVS's Director of Environmental Health & Safety; (c) CVS's Manager of Training and Development.  The topics included, among other topics:
  - o CVS's expectations regarding the physical job requirements of the Clerk/Cashier position, particularly ergonomics and safety issues;
  - o The organizational structure of CVS;
  - o Job duties, responsibilities, and activities of Clerks/Cashiers;
  - o The amount of time, on average, that employees operate the cash register;
  - o Facts and circumstances surrounding any situation in which a Clerk/Cashier operated a cash register from a seated position;
  - o The physical layout of CVS retail stores, including the layouts of different cash register stations;
  - o CVS' policies and procedures concerning the operation of a cash register;
  - o Training provided to employees regarding the operation of a cash register;
  - o Plaintiff's employment, job performance, job duties, and responsibilities

*Id*. ¶ 4.

After completing her discovery, Plaintiff filed a motion for class certification on October 3, 2011.  On April 4, 2012, the Court denied Plaintiff's motion for class certification, finding that Plaintiff—despite all of her discovery efforts—failed to

1   establish commonality among the 17,000 clerk/cashiers who worked across hundreds
2   of unique stores.  Dkt. 131, pages 9-10.

3        Plaintiff appealed both orders to the Ninth Circuit which, in turn, certified
4   questions to the California Supreme Court.  On June 8, 2016, the Ninth Circuit issued
5   an order reversing this Court's orders to reconsider the issues in light of the California
6   Supreme Court's opinion.

7        Although Plaintiff already received substantial information from CVS about its
8   cash stands and policies regarding seating, Plaintiff seeks to broaden the scope of her
9   discovery in this secondary phase.  Where reasonable, CVS has provided additional
10  information, including serving another 2,890 pages of documents including:

11  - A list of stores with addresses and phone numbers;

12  - Updated policies and procedures;

13  - An updated employee handbook;

14  - Employee orientation materials;

15  - CVS Code of Conduct guides;

16  - Register training documents;

17  - Reasonable accommodation questionnaires;

18  - Reasonable accommodation policies and procedures;

19
20  - Accommodation requests involving seating;

21  - Customer feedback related to seated cashiers; and

22  - Floorplans of approximately 700 CVS stores.[8]

23

24

25  _____
[8]   Plaintiff misstates CVS's representations regarding these floorplans.   CVS did not "claim[] for
26  months that it did not have floor plan diagrams for each of its California stores."  To the contrary,
    in accordance with its obligations and representations to Plaintiff, CVS's production of additional
27  floorplans was a result of its continued diligent search.   Declaration of Michael D. Weil ("Weil
    Dec."), ¶ 3.
28

*See* Dkt. 163, Declaration of Michael D. Weil, December 12, 2016, ¶ 7; *see also* Weil Dec., ¶ 3.  And, on February 24, 2017, Plaintiff conducted a physical inspection of the six stores contemplated in Topic Nos. 37-42.  Weil Dec., ¶ 2.[9]  Given the foregoing, Plaintiff cannot seriously claim that she has been deprived of discovery.

### b.   Plaintiff's Eleventh-Hour Deposition Notice Is Consistent With Her Failure To Prosecute Her Case Diligently.

Plaintiff has not pursued discovery diligently.  Since this case returned from the Ninth Circuit in September 2016, Plaintiff has:

- Waited almost four months after the discovery stay was lifted to notice any 30(b)(6) deposition that she and her counsel reasonably should have anticipated months earlier;

- Waited until January 2017 to serve a flurry of discovery, including document requests, subpoenas on third parties, 30(b)(6) deposition notices covering 32 topics, and physical inspection demands for 22 CVS stores; and

- Waited until ten days before the discovery cutoff to notice the 30(b)(6) deposition at issue in this Motion, setting the date for deposition on the very last permissible day.

Plaintiff has back-loaded the main part of her discovery efforts into the final month before the discovery cut-off, and her most recent deposition notice is just the latest example.  Plaintiff offers no reasonable excuse for waiting until the last day in discovery to propound her Notice.  She tries to blame CVS for her delay, but her

---

[9]   Plaintiff's contention that CVS "refused to identify and allow [her] expert to photograph the seat that one of CVS' Clerk/Cashiers uses while operating the front-end cash register" is false.  In actuality, the seat Plaintiff believed to be there was not there – a consequence *not* of CVS's doing. Weil Dec., ¶ 2.  In fact, CVS is unaware of what seat Plaintiff is referring to; Plaintiff did not request to view this seat (or any other) prior to showing up for her inspection.  *Id.*  Any notion that CVS "altered" the workstations or "manipulated" the activities or schedules of its employees for purposes of Plaintiff's inspection is absurd.  CVS did no such things.  *Id.*

argument is meritless.  CVS's appropriate objections to Plaintiff's overbroad written discovery is not an excuse for waiting to notice *42* deposition topics.  Plaintiff could have noticed her 42 deposition topics months before so, at a minimum, the parties could complete their meet and confer on the topics and schedule witnesses so they could be ready to conduct the depositions in January or February.  Indeed, the parties spent a substantial time in 2011 negotiating her first set of topics and CVS needed to produce five different witnesses the first time around, so Plaintiff should have foreseen the amount of time it would take now, especially because Plaintiff has reneged on many of the parties' agreements from 2011.  At the very least, Plaintiff could have and should have noticed Topic Nos. 37-42 along with her January 2017 deposition notice instead of doing so on the last possible day of discovery.

Moreover, the idea that CVS's testimony concerning Topic Nos. 37-42 is necessary for her forthcoming renewed motion for class certification is unbelievable.  Presumably, armed with the identities of individuals sought by way of these Topics, Plaintiff intends to conduct additional interviews and gather additional declarations.  But, she has not done so with the identities of putative class members she already has in her possession.

3.   **Argument**

a.   **Plaintiff Failed To Provide Reasonable Notice Of Her Intent To Depose CVS On Topics Nos. 37-42.**

It is not just the content of Plaintiff's deposition notice that makes the topics objectionable.  It is the content combined with the timing.  Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, "reasonable notice" of depositions is required.  Reasonable notice must also be considered in context of when the court set the discovery cut off.  "An obvious fact to be considered is the time between the notice and the deposition, with an eye toward preparation and travel."  *In re Sulfuric Acid Antirust Litig*., 231 F.R.D. 320, 327 (N.D. Ill. 2005).  In *In re Sulfuric Acid*, with slightly over two weeks before the close of fact discovery, the plaintiffs noticed the

depositions of two defense witnesses for 14 and 15 days out – witnesses the plaintiffs had known about for at least six months prior.  In denying the plaintiffs' motion to compel the depositions, the court found that they failed to provide reasonable notice:

> the depositions are to occur virtually hours before the discovery cut-off, and it was obvious – or at least probable – that the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices.  The plaintiffs were keenly aware of all of these facts and of the competing demands imposed by the other discovery disputes that had been percolating for some period.

*Id.*  There, as here, the "plaintiffs did not pay sufficient heed to the various discovery cut-offs."  *Id.* at 328.  There, as here, there "is little in the way of persuasive explanation from the plaintiffs."  *Id.*  And there, as here, "the conditions giving rise to [the plaintiffs'] predicament are attributable to having waited to the last minute to notice the depositions."  *Id.*

Here, Plaintiff provided CVS exactly ten days' notice (equivalent to five business days, on the eve of the discovery cutoff) of her desire to depose it regarding Topic Nos. 37-42 – at a time when the parties were in the midst of meeting and conferring regarding the scope of *30+* other categories of examination implicating at least four different witnesses residing across the country, and coordinating Plaintiff's site inspections of several of CVS's stores.  Weil Dec., ¶¶ 2, 4-5.  Plaintiff could have propounded these requests months ago.  She offers no reasonable explanation for her delay.  She cannot reasonably or credibly believe that ten days' notice would be sufficient, and her back loading discovery in this manner creates an undue burden.

Moreover, the Federal Rules of Civil Procedure provide that a court can limit the extent of discovery otherwise allowed if it determines that the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  FED. R. CIV. PROC.

26(b)(2)(c)(i).  Topic Nos. 37-42 are inappropriate because the information Plaintiff seeks is more conveniently and efficiently provided in response to written discovery requests that should have and could have been propounded long before.   Indeed, Plaintiff concedes that compliance with the Topics at issue here calls for CVS to pull and/or create documents necessary for the appropriate witness(es) to "read" aloud at deposition.  Although Plaintiff did not seek actual production of these documents (likely because a deposition notice containing document requests must be served with at least 30 days' notice per Rule 30(b)(6)), the burden on CVS is the same, if not more. Ten days' notice is simply insufficient.

### b.    Topic Nos. 37-42 Are Inappropriate.

Topic Nos. 37-42 are improper for additional reasons, as described below.

### (1)    Topic No. 37

Topic No. 37 seeks testimony concerning "[t]he identity of everyone who has worked as a Clerk/Cashier at store number 9114, 9109, 9121, 9177, 9111, or 9187 at any time between June 9, 2008 and the present, and of those people, the identity of any Clerk/Cashier who never operated a front-end register during that time frame." This Topic is unduly burdensome, and Plaintiff's supposition that it would take CVS a total of ten minutes to gather the information sought in Topic Nos. 37-42 is false. First, it would take substantial time for CVS to query and quality control data from its databases to identify clerk/cashiers that worked in its stores over the last nine years. Moreover, CVS does not have a "list" that it can "read" off of at deposition identifying clerk/cashiers who did not operate a front-end register.  *See* Dkt. 162, Declaration of Chris Brown, ¶ 10 (CVS does not retain records that would allow it to determine whether a Clerk/Cashier operated a register).   Accordingly, preparing a witness to testify regarding Topic No. 37 would require CVS to individually inquire as to whether each clerk/cashier who ever worked in the identified stores over the last nine years has ever operated a front-end register.  *See id.*; Dkt. 77 (Class Cert. Opp'n), page 14 (there are Clerk/Cashiers who have never operated a register during their

1  employment with CVS); Dkt. 81-2, Declaration of Lorraine Arnold, ¶ 8; Dkt. 81-7,

2  Declaration of Jacqulyn Chamberlain, ¶ 3.   Assuming that a record of this would

3  reside in employees' personnel files, the files of approximately 331 clerks/cashiers

4  would need to be reviewed.   Declaration of Chris Brown ("Brown Dec."), ¶ 5.  And,

5  for any individual for which it is unclear if he or she operated a register based on a

6  review of his or her personnel file, CVS would need to interview the clerk/cashier.

7  Given that many of these employees have left the company, the process of

8  identification is even more difficult.  *See id.*

9        As well, Plaintiff has never explained why updated contact information for the

10 nearly 3,500 putative class members who already consented to be contacted would

11 not suffice.  Weil Dec., ¶ 4.  This proposal was more than reasonable, especially given

12 that courts in this district have held that the amount of putative class member contact

13 information already in Plaintiff's possession is sufficient and does not justify another

14 production.  *See Maes v. JP Morgan Chase*, 2013 U.S. Dist. LEXIS 29949, at *6-7

15 (S.D. Cal. Mar. 5, 2013) (denying the plaintiff's request for additional contact

16 information where the plaintiff already had contact information for 10% of the

17 putative class).

18       What is more, Topic No. 37 necessarily seeks identities of individuals who are

19 not putative class members (employees who did not operate cash registers).  "A class

20 representative engaging in pre-certification discovery must show good cause that

21 warrants expansion of discovery beyond the class, as defined in the complaint."

22 *Flores v. Bank of America,* 2012 U.S. Dist. LEXIS 182393, *4 (S.D. Cal. Dec. 27,

23 2012), *citing Martinet v. Spherion Atlantic Enters.*, 2008 U.S. Dist. LEXIS 48113,

24 2008 WL 2557490 (S.D. Cal. June 23, 2008) (finding the plaintiff's statewide

25 discovery requests to be "over broad and burdensome" pre-certification, and limiting

26 the scope of the discovery to the location where the plaintiff worked).   In addition, it

27 is well established that CVS has an obligation to protect the privacy rights of third

28 party non-litigants.  *See Bd. of Trustees v. Superior Court,* 119 Cal. App. 3d 516

(1981).  Absent compelling circumstances, CVS may not breach the privacy rights of these individuals.[10]  Plaintiff has not articulated any compelling circumstance to warrant disclosure.

### (2)    Topic No. 38

Topic No. 38 seeks testimony concerning "[t]he identity of everyone who has worked as a Store Manager, Store Manager in Training, Operations Manager, or Shift Supervisor at any of the following store numbers at any time between June 9, 2008 and the present:  9114, 9109, 9121, 9177, 9111, and/or 9187."  As with Topic No. 37, this Topic seeks identities of individuals who are not putative class members.  Absent compelling circumstances, CVS may not breach the privacy rights of individuals. And, as with Topic No. 37, Plaintiff does not offer any reason why members of management at the identified stores would have more or specialized relevant information regarding the use/potential use of seats in their stores than putative class members.  Indeed, there is also no guarantee that any of them has ever operated a register themselves.

### (3)    Topic No. 39

Topic No. 39 seeks testimony concerning "[t]he identity of every Clerk/Cashier who has used a seat at a front-end checkstand at store numbers 9114, 9109, 9121, 9177, 9111, or 9187 at any time between June 9, 2008 and the present, and to the extent there are such Clerk/Cashiers, the nature of any criticism delivered to the Clerk/Cashier about his or her performance as a result of using a seat."  As an initial matter, CVS already provided a response to written discovery (Interrogatory No. 25) on December 12, 2016, which includes a general description of instances where a California retail employee requested the use of a seat for a disability accommodation. Why does Plaintiff now need more?  This Topic is cumulative.

---

[10]   Plaintiff contends, without support, that CVS waived its right to object on grounds of privacy. Not so.  There was no such waiver.  *See, e.g.,* FED. R. CIV. PROC. 30(c)(2) (regarding objections to be made at the time of examination).

1    It is also is unduly burdensome, and Plaintiff's supposition that it would take

2  CVS a total of ten minutes to gather the information sought in Topic Nos. 37-42 is

3  false.  There are approximately 331 Clerk/Cashiers who have worked in these stores

4  during the class period.  Brown Dec., ¶ 5.  CVS would need to hunt through the same

5  number of personnel files to determine whether the employee was ever provided a

6  seat (to accommodate a disability) and then determine if they ever received

7  "criticisms."

8    CVS would need to determine whether any "criticism" was "delivered" to any

9  clerk/cashier about his or her performance as a result of using a seat.  The extent of

10 undue burden that this Topic imposes is unascertainable given that the term

11 "criticism" is vague and ambiguous.  Does it include only "criticism" contained within

12 written performance evaluations and/or write-ups?  If so, does it only count as

13 "criticism" if discipline was imposed as a result?  Adding complication, it is plausible

14 that not all instances of "criticism" are documented – a factor that likely depends on

15 the issuer of the "criticism" in question.  So begs the question:  does the term

16 "criticism" also include verbal counselings and/or even just informal verbal feedback?

17 Further complicating things, does the term "criticism" only include "criticism" from

18 the recipient's supervisor(s)?  Or, can it include "criticism" from equal-in-rank

19 colleagues and/or customers?  CVS cannot know the extent of undue burden that

20 competently testifying on this Topic would pose without clarification of exactly what

21 Plaintiff seeks.

22   Moreover, such information necessarily would implicate privacy concerns

23 because, to the extent CVS provided seats, it was to accommodate disabilities of these

24 employees.  There is no dispute that information about CVS's employee's medical

25 disabilities is highly confidential.

26           **(4)    Topic No. 40**

27   Topic No. 40 is among the most egregious.  It seeks testimony concerning the

28 identity of any ***customer*** who has, at any time between June 9, 2008 and the present,

20

1    "complained" about any Clerk/Cashier using a seat at a front-end checkstand at store

2    numbers 9114, 9109, 9121, 9177, 9111, or 9187, as well as the "outcome" of the

3    "complaint."    The individuals implicated by this Topic are not putative class

4    members, but private citizens who are not CVS employees.  "A class representative

5    engaging in pre-certification discovery must show good cause that warrants expansion

6    of discovery beyond the class, as defined in the complaint." *Flores,* 2012 U.S. Dist.

7    LEXIS 182393, at *4.  In addition, it is well established that CVS has an obligation

8    to protect the privacy rights of its customers.  *See, e.g., Best Buy Stores, L.P. v.*

9    *Superior Court*, 137 Cal. App. 4th 772, 778 (2006) (recognizing the need to protect

10   the privacy rights of the retailer's customers).  Absent compelling circumstances,

11   CVS may not breach the privacy rights of its customers.  Indeed, imagine the

12   backlash:  a customer registers a complaint with CVS and, in apparent retaliation,

13   CVS provides the customer's name and contact information to Plaintiff's counsel so

14   they can call the customer question the customer about his or her complaint.  In meet

15   and confer, CVS offered to check its databases to see if a customer ever lodged any

16   sort of "complaint" and, if so, explain the situation without revealing names.  Weil

17   Dec., ¶ 7.  Plaintiff refused.

18        Moreover, this Topic is unduly burdensome, and Plaintiff's supposition that it

19   would take CVS a total of ten minutes to gather the information sought in Topic Nos.

20   37-42 is false.  There are approximately 331 Clerk/Cashiers who have worked in these

21   stores during the class period.   Brown Dec., ¶ 5.  CVS would need to hunt through

22   the same number of personnel files to determine whether the employee was ever

23   provided a seat (to accommodate a disability) and then determine whether a customer

24   ever complained.

25        CVS cannot expound on the extent of undue burden that this Topic imposes,

26   however, because the terms "complained," "outcome" and complaint" are vague and

27   ambiguous.  Does a customer "complain" when he or she makes any sort of negative

28   remark or comment about the clerk/cashier sitting down?  If so, does the "complaint"

21

1   need to be directed to the clerk/cashier's supervisor?  Or, does the "complaint" to the

2   clerk/cashier directly also count?  Alternatively, does a customer "complain" only

3   when he or she lodges a formal complaint with CVS's customer service department?

4   If so, do only written "complaints" count?  Or, are "complaints" placed over the

5   telephone to CVS's Customer Relations Department also included?   As well,

6   regarding the term "outcome," would an apology to the "complaining" customer

7   count as an "outcome"?  Or, does an "outcome" only include the resolution of an

8   investigation into a "complaint"?  Without clarification, CVS cannot pinpoint the

9   extent of undue burden that this Topic poses.  The Court should deny Plaintiff's

10   motion.

### (5)   Topic No. 41

12          Topic No. 41 seeks testimony concerning "[t]he identity of every Clerk/Cashier

13   who requested a seat for use at a front-end checkstand at store numbers 9114, 9109,

14   9121, 9177, 9111, or 9187 at any time between June 9, 2008 and the present, as well

15   as the outcome of that request and reason(s) for that outcome."  This Topic is unduly

16   burdensome, and Plaintiff's supposition that it would take CVS a total of ten minutes

17   to gather the information sought in Topic Nos. 37-42 is false.  Instances of employees

18   requesting seating (either as a reasonable accommodation or otherwise), the

19   "outcome" of such requests, and the reasons for such "outcomes" are not maintained

20   in a single database.   *See* Dkt. 162, Declaration of Chris Brown, ¶¶ 4-8.

21   Documentation of this, therefore, would reside in clerk/cashier's personnel and

22   human resources files.  *See id.; see also* Brown Dec., ¶ 5.  Moreover, many requests

23   for reasonable accommodation begin at the store level where Store Managers may

24   decide whether to grant such requests on their own or decide to call or e-mail their

25   District Managers, Regional Managers or the Human Resources Department for

26   guidance.  *See id.; see also* Brown Dec., ¶ 6.  Therefore, documentation of this may

27   reside in e-mail boxes of and files kept by managers and Human Resources personnel.

28   *See id.; see also* Brown Dec., ¶ 7.   Additionally, it is likely that there are

undocumented instances of employees requesting and receiving (or not receiving) seats in response. Therefore, CVS would need to individually inquire as to whether any of the 331 clerks/cashiers (many of whom who are no longer with company) who ever worked in the identified stores over the last nine years has ever requested a seat for use at a register. Brown Dec., ¶ 5. This would mean interviewing approximately 56 individuals who ever managed the stores in question. *Id.* at ¶ 6.

In any event, according to Plaintiff, she already has direct information from speaking to putative class members that they were supposedly provided with seats. And, CVS has produced records from its Human Resources database on December 12, 2016 describing instances where a California retail employee requested the use of a seat. *See* Dkt. 163, Declaration of Michael D. Weil, December 12, 2016, ¶ 8. This should be sufficient.

Moreover, such information necessarily would implicate privacy concerns because, to the extent CVS provided seats, it was to accommodate disabilities of these employees. There is no dispute that information about CVS's employee's medical disabilities is highly confidential.

Finally, Plaintiff has already requested this information in document requests which are subject to a pending joint motion. *See* Dkt. 160, Request Nos. 43, 45. This Topic is cumulative.

### (6)   <u>Topic No. 42</u>

Topic No. 42 seeks testimony concerning "[t]he total number of pay periods worked by all Clerk/Cashiers at store numbers 9114, 9109, 9121, 9177, 9111, and 9187 between June 9, 2008 and the present." This Topic is overbroad as it necessarily includes pay periods worked by employees not part of the putative class. *See* Declaration of Chris Brown, ¶ 10; Dkt. 77 (Class Cert. Opp'n), page 14 (there are Clerk/Cashiers who have never operated a register during their employment with CVS); Dkt. 81-2, Declaration of Lorraine Arnold, ¶ 8; Dkt. 81-7, Declaration of Jacqulyn Chamberlain, ¶ 3. Plaintiff cannot and does not justify this overbroad Topic

1  propounded with ten days left before the discovery cut-off.

2  Dated: March 10, 2017                    CLAPP & LAUINGER LLP

3

4                                           /s/ James F. Clapp

5                                           JAMES F. CLAPP
                                            MARITA M. LAUINGER
6                                           Attorneys for Plaintiff
7                                           NYKEYA KILBY

8
   Dated: March 10, 2017                    ORRICK, HERRINGTON & SUTCLIFFE
9                                           LLP

10

11

12                                          /s/ Michael D. Weil

13                                          MICHAEL D. WEIL
                                            Attorneys for Defendant
14                                          CVS PHARMACY, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        24